Charlotte Lynn Rawlins YATES and
Cheryl Jenkins Mathis,
Plaintiffs-Appellees,

v.

AVCO CORPORATION,
Defendant-Appellant.

No. 86–5288.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 10, 1987.
Decided May 21, 1987.

Robert E. Boston, Waller, Lansden, Dortch & Davis, Nashville, Tenn., J. Kevin Hennessy, argued, Chicago, Ill., Don A. Banta, for defendant-appellant.

Frank G. Clement, Jr., argued, Clement, Gibson, Mossman & Pate, Nashville, Tenn., for plaintiffs-appellees.

Before MARTIN, WELLFORD, and NELSON, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Avco Corporation appeals the judgment holding them liable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17, for the sexual harassment of two female employees by their supervisor, Edwin Sanders, in the course of his duties. Sanders did not appeal the judgment entered against him personally. We feel on this record there is sufficient evidence to affirm on the issue of Avco's liability. However, Charlotte Yates (Street) did not adequately prove she was constructively discharged from her employment at Avco Corporation. We also find that the district court erred in finding that Avco retaliated against Cheryl Mathis. For the reasons stated below the judgment of the district court is affirmed in part, reversed in part, and remanded for a recalculation of damages consistent with this opinion.

## I. *Facts*

The complaints in this case by Charlotte Yates (Street) and Cheryl Mathis arose from the actions of one individual, their supervisor, twenty-eight year Avco employee Edwin Sanders. Avco manufactures and assembles wing components for the aerospace industry in Nashville, Tennessee

at five separate facilities. Mathis was hired in February, 1980, and was transferred to Sanders's supervision in June, 1982. Street was hired in the summer of 1982 and put under Sanders's supervision in June, 1983 while Mathis was on sick leave. Both plaintiffs were secretaries.

Cheryl Mathis's relationship with Mr. Sanders began on terms she described as good, but it later became clear that Sanders sought some kind of personal relationship with her. Whenever Mathis was in his office he wanted the door to outside offices closed, and he began discussing very personal matters with her, such as the lack of a sexual relationship with his wife. He then began bombarding her with unwelcome invitations for drinks, lunch, dinner, breakfast, and asking himself to her house. Mathis made it clear that she was not interested in a personal relationship with her married boss. On a couple of occasions Sanders did in fact insist on coming to her apartment during the day and at those times Mathis asked a girlfriend from Avco to come with her.

Sanders also commented on Mathis's appearance, making lewd references to parts of her body. As Mathis rejected Sanders's advances, he would become belligerent. By the spring of 1983 Mathis began to suffer from severe bouts of trembling and crying which became progressively worse and eventually caused her to be hospitalized on two separate occasions, once for a week in June, 1983, and again in July for a few days. During this entire summer Mathis remained out on sick leave, not returning to work until September, 1983. She received her full pay until July 18, when her sick leave benefits expired. She was then compensated at the lesser "disability" rate of pay. When she returned from extended sick leave in September, 1983, Mathis held the same job, title, grade and compensation rate and remained under Sanders's supervision.

As soon as she returned to work, Sanders's harassment resumed. He talked of "putting her on his mistress list" and made lewd jokes and comments. When Mathis resisted his advances Sanders became hostile, giving her more work than she could handle during her part-time hours. Once again she began to experience trembling, crying and emotional distress, and once again she was forced to seek medical help and did not work.

The other employee in this litigation, Charlotte Street, had been transferred to Sanders's supervision in June, 1983 while Cheryl Mathis was on sick leave. Sanders's behavior toward Street was similar to his behavior with Mathis. He incessantly asked her to lunch, dinner and drinks, mentioned sleeping together on more than one occasion, tried to discuss his and her personal relationships and made frequent sexually suggestive comments. He would call Street into his office "because [he] wanted to watch [her] walk out" and then make groaning sounds.

The harassment not only tormented Street and Mathis, it created hostility between them and other members of the department who apparently resented the plaintiffs' familiarity with Sanders. When Street could stand no more of this, she complained to Joe Baron, Manager of Personnel. In October, 1983, while Mathis was out on sick leave, Avco became aware that Mathis's emotional problems were connected to the work situation at Avco and questioned her. Avco then began an investigation of both complaints. During the initial part of the investigation Sanders continued in his job; however, he was later put on administrative leave pending a decision about his future with Avco.

In late November, 1983, Mathis informed Baron that she wanted to be transferred out of Sanders's supervision to another facility, and November 29, she was assigned to the lower position of Secretary II, Grade 05, at the Cumberland River Facility. Her salary and benefits remained the same. Avco documented Mathis's transfer as being due to "return from extended sick leave." When Mathis was later offered a new Secretary III job at the main plant she was asked to sign a statement which said that her transfer to the Secretary II position had been at her request. Mathis chose to remain at the CRF Secretary II position

rather than sign the statement which she believed would exculpate Avco from any liability. It is the actions surrounding her transfer and its documentation which Mathis contends constitute Avco's retaliation.

When both Street and Mathis complained of harassment, they were asked not to go to the EEOC and were assured that Avco would be their representative in the matter. The company refused to give them transcripts of the tape recorded statements each had made in connection with the company's investigation. Though both asked for written assurance that their jobs would be protected and for corrections in their personnel files regarding the sick leave each was forced to take because of the uncomfortable positions in which they had been placed, neither of these things was ever done. The original sick leave was never reinstated for either Mathis or Street.

As a result of the Avco internal investigation Ed Sanders was found to have harassed employees, was drastically demoted, and received a substantial cut in salary. Though this meant Sanders would no longer be a supervisor, the plaintiffs were forced to endure unnecessary personal hardship to get to this stage. Both of their personnel files contained references to extended sick leave rather than giving any indication of the true reason for their absences. Even after Sanders was penalized, Avco refused to correct their personnel records. Though the company arranged an administrative leave for Sanders while he was under investigation, this same arrangement was never made for Mathis or Street. These discrepancies help to demonstrate that Avco's sexual harassment policy was not functioning properly nor implemented equitably.

## II. *Proceedings Below*

Pursuant to 42 U.S.C. § 2000e–5(f)(5), the claims were referred to a magistrate on August 14, 1984, and a hearing was held in April, 1985. The magistrate found that the plaintiffs had established a prima facie case against both defendants in that (1) as women they were members of a protected class; (2) they were subject to unwelcome sexual harassment, as it was not solicited and not desired; (3) the harassment was based on sex because there was no evidence that men were subjected to similar harassment; (4) because the harassment was sufficiently persistent and severe to affect the psychological well-being of the plaintiffs it affected a "term, condition, or privilege of employment;" and (5) a sufficient respondeat superior relationship existed to hold Avco liable for Sanders's actions. *See Highlander v. K.F.C. National Management Co.,* 805 F.2d 644, 649 (6th Cir.1986); *Rabidue v. Osceola Refining Co.,* 805 F.2d 611, 619–20 (6th Cir.1986). The magistrate found not only that Sanders had been given the authority to hire, fire and promote, but Avco had at least constructive knowledge of Sanders's behavior based on earlier allegations against him. Thus, he found both Sanders and Avco liable to Mathis and Street and ordered that they be awarded back-pay for the time they were out on sick leave, plus prejudgment interest; that Street be awarded incidental expenses incurred in her job search; that Street be reinstated if she desired; that Avco correct the misleading impressions in the personnel files, including placing a copy of his report in the files; and that Mathis and Street be awarded their expenses in bringing the action, including reasonable attorney's fees. The magistrate also found that should either plaintiff return to Avco, the Court should use its broad powers to ensure no contact between them and Sanders, including but not limited to, transferring him to another facility.

The district court adopted the magistrate's report with the exception that it did not agree with the injunctive order to transfer Sanders.

## III. *Issues on Appeal*

As we noted above, Sanders did not appeal the judgment entered against him by the district court. Avco, on the other hand, argues that the decision in *Meritor Sav. Bank, FSB v. Vinson,* —— U.S. ——, 106 S.Ct. 2399, 2407–08, 91 L.Ed.2d 49 (1986),

holds that traditional agency principles should be applied to questions of employer liability for harassment carried out by supervisors, and that consequently, the district court was in error. Though *Vinson* does adopt an agency standard, we find that under an agency theory and the facts of this case, Avco remains bound by Sanders's actions. Avco also argues that the district court's finding that Street was constructively discharged was in error. We agree on this issue and reverse the finding of constructive discharge. On the issue of retaliation against Mathis, we also believe the district erred and reverse. On the question of Mathis's back-pay for the time she was out on sick leave, we affirm. However, it is our belief that the magistrate's grant of damages to Street incurred in her job search and in pursuing this litigation constituted an abuse of discretion and we reverse on the award of these damages.

## A. Avco's Liability for Sanders's Acts

■ The claim here is based on Title VII's provision stating that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his ... terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1).

The courts have found that sexual harassment manifests itself in one of two forms: harassment involving the exchange of concrete employment benefits for sexual favors (*quid pro quo* discrimination) and harassment that creates an offensive or hostile working environment. *See Meritor Sav. Bank FSB v. Vinson*, —— U.S. ——, 106 S.Ct. 2399, 2403, 91 L.Ed.2d 49 (1986); *Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 618 (6th Cir.1986); Equal Opportunity Commission's guidelines on Discrimination Because of Sex, 29 C.F.R. § 1604.11(a) (1986). It is the latter type of discrimination which we are faced with here.

Unlike the situation the Supreme Court saw in *Vinson*, 106 S.Ct. 2399, there is no question that the sexual harassment complained of here did in fact occur and that the sexual advances were unwelcome.

These factual findings are not disputed. The primary question here is whether as the district court found, Avco should be held responsible for its supervisor's acts. To the extent that this is a question of fact, as with the issue of discrimination, we will not reverse the district court unless its findings were "clearly erroneous," Fed.R. Civ.P. 52(a); *Pullman-Standard v. Swint*, 456 U.S. 273, 276, 102 S.Ct. 1781, 1783, 72 L.Ed.2d 66 (1982); *Geisler v. Folsom*, 735 F.2d 991, 994 (6th Cir.1984).

Even when we apply traditional agency principles to this record, in accordance with *Vinson*, 106 S.Ct. at 2408, the district court's decision holding Avco liable for Sanders's actions remains correct. Though in *Vinson*, the Court held that employers would not be automatically liable for the sexual harassment of supervisors, *id.* at 2408, it also stated that neither would employers be insulated from liability merely because of absence of notice or because they have grievance procedures and anti-discrimination policies which plaintiffs failed to follow. *Id.* at 2408–09. The company's policies and procedures, the Court held, are simply facts to be considered in conjunction with others. *Id.* at 2409.

In *Vinson* the Supreme Court stated that employers are not strictly liable for the harassment carried out by their supervisors, and we must now review the effect of this statement on EEOC regulations which the magistrate below relied on in part in making his determination. These regulations appear at 29 C.F.R. § 1604.11(c) and read:

an employer ... is responsible for its acts and those of its agents and supervisory employees with respect to sexual harassment regardless of whether the specific acts complained of were authorized or even forbidden by the employer and regardless of whether the employer knew or should have known of their occurrence.

This provision applicable to supervisory employees is different from the standard applied to co-workers which states that an employer is liable only if it "knew or should have known" and failed to take immediate

and appropriate corrective action. 29 C.F.R. § 1604.11(d). Needless to say we are not bound by these agency regulations, rather, they are to operate as guidelines. *General Elec. Co. v. Gilbert*, 429 U.S. 125, 141, 97 S.Ct. 401, 410, 50 L.Ed.2d 343 (1976); *Downes v. Federal Aviation Admin.*, 775 F.2d 288, 291 n. 3 (Fed.Cir.1985).

In this case Avco had a published procedure regarding sexual harassment. That procedure provided that the employee should report any conduct or circumstances which may constitute sexual harassment to the Employee Relations Department and to his immediate supervisor; that the Department would investigate complaints, determine corrective action and notify the supervisor of steps to be taken; and that the supervisor would promptly implement the corrective action. Though the intent of this policy was commendable, the facts of the case demonstrate that not only was it vague on paper, it was vague and ad hoc in its implementation and did not function effectively to eliminate harassment in the Avco Nashville plants.

First, the policy assumes that the supervisor is not the harrasser, and gives the supervisor the responsibility for both reporting and correcting the harassment. Such a policy must necessarily discourage reporting and diminish an employee's faith in the system's ability to alleviate the problem when the supervisor is in fact the harasser.

Second, when Mathis and Street finally complained to Joe Baron about the harassment they were experiencing, the matter was not dealt with effectively. Upon complaining, both Mathis and Street were told *not* to go to the EEOC, and that their complaints would be handled promptly within the company's harassment investigation framework. Taped testimony was taken and an investigation was begun, yet when Mathis and Street requested copies of their testimony their requests were denied. Street was told that if she felt uncomfortable continuing to work under Sanders's supervision while he remained under investigation, an administrative leave could be arranged. However, when Street went to

Joe Baron seeking such a leave, she was told repeatedly just to call in sick. When she complained to Baron about the practice, he told her to get a note from her doctor to make the sick leave legitimate. When Street attempted to do that, her doctor correctly refused, telling her that her leave should be handled by the company. The "confidential" procedures of the department meant that the plaintiffs' personnel files documented excessive absenteeism, and for all intents and purposes Charlotte Street believed she was endangering her position as an Avco employee. In addition, Street was not free to explain to Sanders why she was absent from work. This resulted in one visit by Sanders to her house during which she was terrified that he might realize she was in fact at home and try to come in. Avco's policy of not placing documentation of sexual harassment in personnel files seems to protect only Avco and the harasser, rather than the affected employee. An effective anti-harassment policy does not operate this way.

Third, evidence was offered to indicate that Sanders harassed women as early as 1980. This evidence suggests that Avco had notice of Sanders's tendencies at this earlier date, and also constitutes additional proof that the anti-harassment policies of Avco were not functioning properly. This testimony related to Sanders's harassment of three women, Kathy Kelley, Sherry Billingsley, and Wanda Bennett. Kelley testified that she mentioned Sanders's behavior to Bill Minnear, who was a member of Avco management, just as a friend, but that she was afraid of losing her job and did not want to go to the Director of Personnel or the Director of EEO Compliance. Cheryl Mathis's predecessor, Sherry Billingsley had found Sanders's desire to be personally involved with her offensive, but did not complain to management. She testified that she "just did not feel the matter would be taken care of." The evidence indicates that Billingsley's complaint did reach Avco management through a third party but that no action was taken. Paul Fisher, the Director of Personnel at Avco in 1981 and 1982, testified that Wanda Bennett had once come into the office com-

plaining of advances made by Sanders. He then stated that the company did not deal with this matter according to its stated policy. This testimony was later contradicted by Bennett herself.

Though it is difficult to say unequivocally that Avco had actual notice of Sanders's behavior prior to Mathis's and Street's complaints in 1983, such a finding is not necessary. The magistrate found that Avco "knew, or upon reasonably diligent inquiry should have known, that Sanders was sexually harassing the plaintiffs and other females." The district court adopted this factual finding and we conclude that such finding was not clearly erroneous. As the district court pointed out, the magistrate had the opportunity to observe the demeanor and credibility of the witnesses and his observations should be accorded great deference. *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). A review of the record has not left us with the "definite and firm conviction that a mistake has been committed." *See Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511 (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)). The Supreme Court made it clear in *Vinson*, 106 S.Ct. at 2408, that notice is not an absolute requirement to hold employers liable when supervisors are involved. The magistrate found at least constructive notice here, and we affirm that finding.

Here we have a company with a sexual harassment policy that did not function properly, coupled with a twenty-eight year supervisory employee who harassed women on a daily basis in the course of his supervision of them. Thus, even under traditional agency principles, Avco should be liable. The essential question in applying agency principles is whether the act complained of took place in the scope of the agent's employment. This determination requires an examination of such factors as *when* the act took place, *where* it took place, and whether it was *foreseeable. See generally* Restatement (Second) of Agency §§ 217–232 (1958). The Restatement specifically provides that even though an act is forbidden it may still be within the scope of employment. Restatement (Second) of Agency § 230. Here the harassment took place at the office, during working hours and was carried out by someone with the authority to hire, fire, promote and discipline the plaintiffs. There is no question that it was foreseeable. Had it not been, Avco would not have had a policy attempting to deal with it. Thus, none of the "agency factors" would indicate that Avco should be absolved of the responsibility for Sanders's actions.

Thus, we agree with the district court that the magistrate's finding that Avco at least reasonably should have known of Sanders's actions was not clearly erroneous. We believe that because Sanders was both an agent and supervisor of Avco, it is easier to impute his own knowledge to the Avco management.[1] We also find that although Avco took remedial action once the plaintiffs registered complaints, its duty to remedy the problem, or at a minimum, inquire, was created earlier when the initial allegations of harassment were reported. In addition, although its remedial action with regard to the plaintiffs' complaint was prompt, it was not adequate.

**B. Constructive Discharge**

 As Avco points out in its brief, constructive discharge is, at least partially, a question of law and must therefore be reviewed by this Court *de novo. Jacobs v. Martin Sweets Co.*, 550 F.2d 364, 370–71 (6th Cir.), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977). A finding of constructive discharge in this circuit requires an inquiry into both the objective feelings of an employee, and the intent of the employer. A constructive discharge exists if "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes

---

**1.** We distinguish our opinion in *Rabidue*, 805 F.2d 611, because of the differing levels of responsibility of the harassers. *Rabidue* involved parties who were peers and we expressly re-served judgment on the issue of the scope of respondeat superior liability when a supervisor is involved. 805 F.2d at 621 n. 6.

would have felt compelled to resign." *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir.1982), *cited in Henry v. Lennox Industries*, 768 F.2d 746, 752 (6th Cir.1985); and *Geisler v. Folsom*, 735 F.2d 991, 996 (6th Cir.1984). In a sexual harassment case involving a male supervisor's harassment of a female subordinate, it seems only reasonable that the person standing in the shoes of the employee should be "the reasonable woman" since the plaintiff in this type of case is required to be a member of a protected class and is by definition female.[2]

This court has previously held that "[p]roof of discrimination alone is not a sufficient predicate for a finding of constructive discharge; there must be other 'aggravating factors.'" *Geisler*, 735 F.2d at 996 (quoting *Clark v. Marsh*, 665 F.2d 1168, 1173–74 (D.C.Cir.1981)). We have also required some inquiry into the employer's intent and the reasonably foreseeable impact of its conduct on the employee. *Henry*, 768 F.2d at 752; *Easter v. Jeep Corp.*, 750 F.2d 520, 522 (6th Cir.1984); *Held*, 684 F.2d at 432. Because we must look both at the employer and the employee, it is foreseeable that one of these tests could be fulfilled while the other would not. Thus, it would appear that the courts have been trying to create a two-pronged test whereby the feelings of a reasonable employee would not be enough to show discharge without at least some foreseeability on the part of the employer. Here, we do not believe that test has been met.

Because Street resigned from Avco on January 9, 1984, after the return from the Christmas holidays and after Sanders's demotion, it is the continuing, post-remedy work situation which is relevant to our inquiry. Her allegation of constructive discharge stems primarily from events which occurred on January 5. An examination of those events reveals neither discriminatory intent nor foreseeable negative impact on her by Avco.

Edwin Sanders had returned to work at Avco on January 3, 1984, as an administrator on the seventh floor of the Highland Ridge building. Street worked on the fifth floor of the Highland Ridge building. On January 5, Street had called into work sick and Avco contends that it therefore saw a good opportunity to have Sanders organize the materials in the desk of Herschel Travis who had died over the Christmas holidays. Travis had worked at a desk adjacent to Street's. Street admits that she came into work unexpectedly, fifteen minutes before the end of the shift because she needed to get some insurance forms. She then encountered Sanders at the adjacent desk and asked him what he was doing there. He replied that he had been assigned there indefinitely. Street then reportedly stormed out and made no attempts to contact any Avco officials for an explanation before she delivered her resignation on January 9. Joe Baron learned of these events, and on January 6 he telephoned Street to explain the mix-up and apologize. He asked her to return to work but she refused.

Regardless of whether Street's appearance at work was contrived by her for the purpose of encountering Sanders or whether it was completely innocent, we find that no constructive discharge took place. Avco did not *intend* that Street and Sanders see each other, and could not have reasonably foreseen the result, given that Street had called in sick that day. Also, Street's behavior was not reasonable; though she was understandably upset upon seeing Sanders and being told he would remain there indefinitely, Street sought no outside confirmation or explanation, and refused to listen when Baron called her.

Accordingly, we reverse the district court's finding that Street was constructively discharged and need not reach the issue of tolling of back-pay.

## C. Retaliation

The district court found facts which it held constituted a prima facie case for

---

**2.** Were this a sexual harassment case involving a male subordinate, the "reasonable man" standard should be applied. We acknowledge that men and women are vulnerable in different ways and offended by different behavior. *See Rabidue*, 805 F.2d 611, 626 (Keith, J., dissenting).

Avco's retaliation against Mathis and that the inference of retaliation was not dispelled by Avco. We feel that the court's findings of adverse employment action were clearly erroneous and reverse on this issue.

 Section 704(a) of Title VII provides that an employer may not discriminate against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter, ..." 42 U.S.C. § 2000e–3(a). A prima facie case is made by an employee who shows that she engaged in a protected activity, she was subsequently subjected by her employer to adverse employment action, and that a causal link existed between the two events. *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir.1982). Though we agree with the district court that Mathis satisfies two of the three prongs of her prima facie case, we believe the court erred in finding that she suffered adverse employment action. The basis for her claim was that when Avco offered her a Secretary III position it asked her to sign an agreement stating that her transfer to the Secretary II position had been at her request. She also included in this claim Avco's failure to properly document her sick leave. It is clear from the record that Mathis's transfer to the Secretary II position took place because of her request not to work under Sanders's supervision. Though it is true that Mathis had never previously been required to sign any document when being promoted, we fail to see that such a requirement constitutes adverse action. In addition, though Mathis was demoted a grade level upon her return to work, she continued to receive the same salary and benefits and was assured that she would receive the next available Secretary III position. This situation is almost identical to the transfer which occurred in *Ferguson v. E.I. duPont deNemours and Co.*, 560 F.Supp. 1172, 1201 (D.Delaware 1983), an opinion with which we agree. There, the plaintiff's transfer was temporary and resulted in no pay or benefits reduction. The court held that no adverse action was established and Ferguson had failed to prove her prima facie case. We

believe that the same is true here and consequently, reverse on the issue of retaliation.

## IV. *Damages*

### A. Mathis's Lost Wages

 As we noted above, we do not believe that the district court erred in awarding back-pay to Mathis for the time she was on sick leave. The award of back-pay is not the same as an award of damages for emotional distress which concededly is not recoverable under Title VII.

Because Mathis was forced to take extensive sick leave, she was compensated at a lower level than she would have been had she remained at work. We believe that she provided adequate proof that Sanders's behavior caused her absence from work and that the magistrate and district court properly ordered the company to compensate her.

### B. Computation Errors

Because we find that Street was not constructively discharged in this case, it is necessary that her damages be recomputed and we remand to the district court on this matter.

As for Street's alleged expenses incurred in finding a new job and in pursuing this litigation, we find that the magistrate's award of damages was an abuse of discretion. Both the magistrate and the district court acknowledged that Street failed to document her expenses. To grant one half of the claimed amount without documentation was inappropriate. Consequently, we reverse the district court's award of these damages to Street.

## V. *Conclusion*

On the record before us we cannot recompute damages and we therefore remand to the district court for a recalculation of the damage award to both Mathis and Street in accordance with this opinion.

WELLFORD, Circuit Judge, concurring:

I agree with most of Judge Martin's thorough analysis in this case. In my

view, the question of Avco's knowledge of Sanders' propensity to harass female employees under his supervision is a very close call and particularly difficult under the circumstances. I remain doubtful that under traditional agency principles Avco should be held bound, since an employer is not automatically liable for untoward acts of a supervisor contrary to its announced and expressed policy against sex discrimination. *See Meritor Sav. Bank, FSB v. Vinson,* — U.S. ——, 106 S.Ct. 2399, 2407–08, 91 L.Ed.2d 49 (1986). The EEOC regulations dealing with agency or respondeat superior liability in this area are merely guidelines and are not deemed controlling. Avco's established procedure about reporting sexual harassment was not vague; it was apparent that if an immediate superior were alleged to have violated the Avco policy, the aggrieved employee was to report the conduct to the next highest supervisor in the line of authority.

With the benefit of hindsight, perhaps Avco should not have unduly emphasized the privacy considerations of the complaining employee or employees, and the alleged supervisor perpetrator. At the same time, the sensitive nature and potentially serious adverse affects of such a sexual harassment charge, particularly if unfounded, is a peculiarly difficult problem for the concerned employer. On balance, I concur, but with some considerable reservations, and agree that the district court's finding that Avco "knew, or upon reasonably diligent inquiry, should have known" of Sanders' activity and propensity was not clearly erroneous. I have no "firm conviction" that a mistake has been made in this respect.

I agree that damages in this case are restricted to those of Mathis for the limited period based upon proof that her sick leave was caused by Sanders' misconduct, and that none are due for claimed retaliation or claimed constructive discharge. I would find no basis for requiring administrative leave for either Mathis or Street so long as transfer was available to them during investigation of their charges.

DAVID A. NELSON, Circuit Judge, concurring.

The magistrate found, in substance, that Avco had long been on notice of Mr. Sanders' apparent inability to conduct himself properly toward the company's female employees, and like Judges Martin and Wellford, I believe we must accept that finding as not clearly erroneous. The company having done absolutely nothing about the problem before the plaintiffs lodged their complaints, it seems to me that Avco may be held liable for the plaintiffs' damages under traditional agency concepts. This court is affirming the finding of liability on that basis, as I understand it, and I write separately only to emphasize that Avco having been held responsible for Sanders' actions "under an agency theory and the facts of this case," our holding ought not to be construed as suggesting that the employer would be liable even if the facts of the case did not support a finding of liability under established agency principles.