991 F.2d 795
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Hugh R. HALL, Plaintiff-Appellee, Cross-Appellant,
v.
ASSOCIATED DOCTORS HEALTH AND LIFE INSURANCE COMPANY,
Defendant-Appellant, Cross-Appellee.
 Nos. 92-5353, 92-5411 and 92-5458.
 United States Court of Appeals, Sixth Circuit.
 March 29, 1993.
 
 Before KENNEDY, NORRIS and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 In this case brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., defendant Associated Doctors Health and Life Insurance Company ("ADH") appeals the reconsideration and reversal of a grant to it of summary judgment, the denial of its motion for judgment notwithstanding the verdict, the admission of testimony of two witnesses, and the denial of its motion for a new trial. Plaintiff Hugh R. Hall cross-appeals the denial of his motion for reinstatement or front pay. Because the District Court erred in not granting judgment notwithstanding the verdict, we reverse.
 
 I.
 
 2
 Defendant first hired plaintiff in 1972. In 1974, plaintiff became District Manager of ADH's Knoxville office. During the course of his employment with ADH, he once received the highest performance bonus in the company and three times was named "Manager of the Month." He resigned as an insurance salesperson and as district manager on June 3, 1987, at the age of 47. On October 1, 1986, ADH was purchased by GeorgiaUS Corp. The new owners appointed Marion McTyre, then 59 years of age, to serve as President and Chief Executive Officer, and Ted Lane, then 65 years of age, to serve as Vice-President and Agency Director. In turn, McTyre appointed then-Regional Manager Wilbur Gaddy, then 49 years of age, to serve as Assistant Agency Director, a position reporting to Lane.
 
 
 3
 In May of 1987, the ADH Regional Manager for Florida retired. Plaintiff claims he should have been given that position but was not because of his age, and that that contributed to his constructive discharge. The position was offered to James L. Banks, then 56 years of age, who declined. At trial, Gaddy testified that after Banks declined the position, McTyre stated that "by offering this position to someone of Banks' age, at least they can't accuse us of age discrimination." McTyre denied having made the remark. The position was next offered to Orville Bray, then 39 years of age, who accepted. McTyre testified that the primary criterion in choosing the replacement regional manager was performance in terms of growth of premiums as a district manager. McTyre testified that in the previous 12 months, Banks' district had led ADH with a 20% growth in premiums and Bray's district had the second highest growth in premiums, 16%. According to McTyre, plaintiff's premiums had decreased 14% in the same time. Plaintiff attributes that decrease to the departure of four agents to join a rival. Plaintiff's district had been the premium leader in the company for significant earlier periods. McTyre testified that the ages of Banks, Bray, and plaintiff were not factors in determining who would be offered the Florida Regional Manager position. Lane also testified that plaintiff's age was not a consideration in selecting a new Florida Regional Manager.
 
 
 4
 Plaintiff had expressed to ADH a desire to move to Florida. In February of 1987, he had met with Lane to discuss taking over the Florida Regional Manager position. According to plaintiff, in that meeting Lane told him he was "really getting too old to rock the boat" but that if he truly desired the Florida position, it would be his when it opened up. Lane then told plaintiff he could serve as the Tampa District Manager until the Florida Regional Manager position opened up. Later, after Bray had been given the Florida Regional Manager position, Gaddy called plaintiff and offered him the Tampa District Manager position. Plaintiff replied that he would only take the position if he would receive a guaranteed $3,000 per month draw for three months, an increase over his $1,900 guaranteed draw at the time. Gaddy told him "I don't think that will be a problem." Gaddy did not have the authority to increase plaintiff's guarantee. Based on his discussion with Gaddy, plaintiff placed his homes in Knoxville for sale and found a home to purchase in Florida. When Gaddy brought the conversation up with McTyre and Lane, however, they told him the increased guarantee would conflict with existing policy, to maintain for three months a moving district manager's guarantee at the level before the move.
 
 
 5
 On June 3, 1987, Bray called plaintiff to inform him that his guarantee would not be increased to $3,000 upon moving to Florida. That evening, plaintiff called McTyre to discuss the issue. Plaintiff explained the difficulty with leaving an established office and moving to one which would require recruiting and training new agents. McTyre responded that regardless, the $3,000 guarantee would not be forthcoming. Plaintiff testified that he then told McTyre that "if that is the way he is going to conduct business" then "I was not going to work for him." After making that statement, plaintiff asked McTyre what he should do. McTyre responded to plaintiff, "turn in your keys." In a letter to ADH sales agents, plaintiff wrote "I have resigned as of June 3, 1987." As a temporary measure after plaintiff's resignation, Nyla Carney, who was the same age as plaintiff, was made Manager of the Knoxville office. Carney was not intended to be a permanent replacement, however, and after five months the position was, ironically, filled by Bray, who had failed to perform up to ADH expectations in the Florida Regional Manager position and had been demoted.
 
 
 6
 At trial, plaintiff introduced the testimony of a statistical expert, Louis Noyd, who analyzed the age of ADH employees following the purchase of the company by GeorgiaUS. Noyd testified that the average age of ADH employees was 47 in 1986, 44.16 in 1987, 43.73 in 1988, and 44.53 in 1989. Noyd testified that during the same period, the average age of the American work force increased from 31.4 to 32.9. Noyd did not, however, apply to his findings any method of determining the statistical significance. He did not differentiate between people who left ADH because of voluntary resignation, retirement, involuntary termination, or death. He also did not analyze the average age of the pool of potential district and regional managers.
 
 
 7
 Plaintiff also introduced the testimony of a former ADH Regional Manager, DeWayne Mize, in regard to the general attitude toward age at ADH. Mize testified that after the purchase of GeorgiaUS in 1986, "there was a trend toward hiring younger people" because they were more easily trained and not "set in their ways" as older people were. According to Mize, ADH "didn't want to promote older people into management." Instead, the company "wanted younger people and just a younger outlook." Mize testified that Lane had told him "a lot of older heads would [roll]. He also told me I was young and not [to] get discouraged because a lot of the older people were going to be let go." Mize testified that older employees were being "forced out." Mize asserted that he left ADH at age 36 because he did not want to be subject to the consequences of this attitude when he himself became older. Mize, however, also testified that he possessed no actual knowledge of individual employment decisions.
 
 
 8
 In response, both McTyre and Lane testified that there was no plan to replace older workers with younger workers or to force older employees to resign. ADH presented evidence that in the year plaintiff resigned, it hired 32 district managers, a majority of whom were over 40 years of age. Eleven were between 40 and 49; five between 50 and 59; and one over 60. Nine of the district managers hired were older than plaintiff. ADH also presented the testimony of a statistical expert, Clarence L. Holland. Holland testified that the average age of ADH employees was 45.82 in 1984, 46.21 in 1985, 45.51 in 1986, 46.03 in 1987, 43.06 in 1988, and 43.64 in 1989. Holland also applied three methods--regression analysis, analysis of variance, and chi square analysis--to determine the statistical significance of the age findings, in other words to determine whether the findings could be the result of chance. Holland testified that on the basis of these methods, there was no statistical significance to the variation in average age during these years.
 
 
 9
 On April 10, 1989, plaintiff filed suit under the ADEA, claiming that he had been constructively discharged by ADH on June 3, 1987, because of his age. ADH moved for summary judgment, and on July 16, 1991, the District Court granted the motion. On August 5, 1991, however, the District Court granted plaintiff's motion to set aside the summary judgment. The case was then tried, with the consent of both parties, before a magistrate judge in October of 1991. ADH objected to the testimony of both Noyd and Mize, which objections were overruled. At the close of plaintiff's case and at the close of evidence, ADH made motions for directed verdict which were denied. On October 21, 1991, the jury returned a verdict in favor of plaintiff, including special interrogatories that plaintiff was constructively discharged and that age was the determinative factor in doing so. The jury awarded plaintiff $275,000 in compensatory damages. This appeal and cross-appeal followed.
 
 II.
 
 10
 Defendant challenges the admissibility of the testimony of Noyd and Mize and also challenges whether plaintiff has presented sufficient evidence that age was a determining factor in ending his employment with ADH. Because we decide the case based on the inadequacy of proof of constructive discharge, however, we do not reach those issues.
 
 
 11
 To review a denial of motion for judgment notwithstanding the verdict, or j.n.o.v., we apply the same standard applied by the District Court in denying the motion. Chappell v. GTE Products Corp., 803 F.2d 261, 265 (6th Cir.1986), cert. denied, 480 U.S. 919 (1987). In doing so, we view the evidence in the light most favorable to the party opposed to the motion and draw all reasonable inferences in favor of that party. Schrand v. Federal Pacific Elec. Co., 851 F.2d 152, 154 (6th Cir.1988). However, judgment notwithstanding the verdict is appropriate when "the court finds that the evidence points so strongly in favor of the movant that reasonable minds could not come to a different conclusion." Chappell, 803 F.2d at 265. Before allowing a case to be decided by a jury, a district court should be careful that the issue is "not whether plaintiff was treated fairly but whether discrimination occurred." Sahadi v. Reynolds Chemical, 636 F.2d 1116, 1117 (6th Cir.1980).
 
 III.
 
 12
 The basis of plaintiff's age discrimination claim is his assertion that the events surrounding his attempt to move to Florida and to become the Florida Regional Manager for ADH rise to the level of constructive discharge. Plaintiff did not claim actual discharge in the District Court. Constructive discharge involves inquiry into the situation from the perspective of both employee and employer. Yates v. Avco Corp., 819 F.2d 630, 636-37 (6th Cir.1987). To the employee, the situation must be "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Id. To the employer, this impact upon the employee must have been "reasonably foreseeable." Id. at 637.
 
 
 13
 That Bray was given the Florida Regional Manager position and that plaintiff was not among the top two candidates for the position obviously was disappointing to plaintiff. It would be difficult to assert, however, that being passed over for promotion is by itself generally either grounds for a reasonable person to resign or something which an employer reasonably should have foreseen would lead the employee to that point. So, too, the circumstances surrounding Gaddy's commitment to increase plaintiff's guarantee when he took the Tampa District Manager position and the subsequent communication to plaintiff that guarantee increase would not be forthcoming undoubtedly were frustrating to plaintiff. Yet, even when the events surrounding the Florida Manager position are coupled with the events surrounding the denial of the guarantee increase, plaintiff's entire employment situation does not become so "difficult or unpleasant" that he reasonably should have felt compelled to resign, and thus the first prong of the Yates test for constructive discharge has not been met. The second prong of the Yates test could not be satisfied by the combination of events leading up to plaintiff's resignation either. An employer should not be required to anticipate that an employee will feel pushed out every time someone else is chosen for a promotion and a pay raise--here, one not in keeping with company policy--is denied. Plaintiff further contends that McTyre's statement, that plaintiff should return his keys if he no longer wanted to work for ADH, at the conclusion of the phone conversation concerning the guarantee increase, supports a finding of constructive discharge. McTyre's statement, however, was in direct response to plaintiff's inquiry about what plaintiff should do if he felt he could no longer work for ADH. As such, it does not transform plaintiff's decision that he no longer desired to work at ADH into a reasonable feeling that he had been compelled to leave which ADH reasonably should have anticipated.
 
 IV.
 
 14
 Thus, while the circumstances surrounding plaintiff's decision to resign from ADH indicate friction between employer and employee, they do not rise to the level which a reasonable jury could find to constitute constructive discharge. For this reason, we hold the District Court to have erred in denying ADH's motion for judgment notwithstanding the verdict and REVERSE.