DECISION AND JUDGMENT ENTRY
{¶ 1} Rebecca Hann appeals the decision of the Erie County Court of Common Pleas to grant a directed verdict to Perkins Township Board of Trustees and Timothy R. McClung, Chief of Perkins Township Police Department, on her claims for retaliation and sexual discrimination. Because we conclude that the trial court did not err in granting a directed verdict to appellees, we affirm.
 {¶ 2} This is the second appeal in this employment case. Hann was hired as the first full-time female police officer for Perkins Township in August 1996. In January 1998, she filed a complaint for sexual discrimination, harassment, and retaliation in violation of R.C. 4112.02, for intentional infliction of emotional distress, and for defamation against a number of defendants.[1] The matter proceeded to jury trial on the harassment, discrimination, retaliation, and intentional infliction of emotional distress claims in June 2000. The jury returned a verdict in favor of all defendants on all claims. Hann appealed only the retaliation and discrimination verdicts in favor of the township and McClung. In Hann v. Perkins Twp. Bd. of Trustees (Nov. 2, 2001), 6th
Dist. No. E-00-041 ("Hann I"), this court reversed the jury's verdict because the trial court had failed to re-instruct the jury on the retaliation and discrimination claims after the jury had posed an ambiguous question to the court during deliberations. The case was retried on April 7 — 10, 2003, before a different visiting judge. After Hann rested, appellees' motion for a directed verdict was granted. Hann now raises the following assignment of error on appeal:
 {¶ 3} "The trial court committed reversible error by directing a verdict in defendants' favor."
 {¶ 4} Hann argues that the trial court should not have granted a directed verdict to appellees because the law of the case doctrine prohibited a directed verdict in their favor and because there was substantial, competent evidence on the record to support her claims. Appellees respond that some of Hann's claims were barred by either res judicata or the law of the case doctrine and that Hann failed to establish her claim for retaliation and discrimination because she did not suffer an adverse employment action.
 Law of the Case Doctrine {¶ 5} Hann argues that because we remarked in Hann I that "substantial justice was not done the party complaining" and then remanded the case for "proceedings consistent with the decision," we essentially stated that there was enough evidence to proceed to a jury. She also contends that because appellees did not appeal the denial of their directed verdict motions in the first trial they could not raise a directed verdict motion at the second trial.
 {¶ 6} Appellees also contend that the law of the case doctrine applies but, instead, that it applies against Hann. They argue that Hann did not appeal the directed verdict granted to the township on her sex discrimination claim for events occurring before June 25, 1997. She also did not appeal her harassment claim against Sergeant Matthews. Consequently, in her second trial she could not present a claim for sex discrimination based on the township's failure to investigate her sexual harassment complaint against Sergeant Matthews.
 {¶ 7} Under the law of the case doctrine, the "decision of a reviewing court * * * remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." Pipe Fitters Union Local No. 392 v. Kokosing Constr.Co., Inc. (1998), 81 Ohio St.3d 214, 218 quoting Nolan v. Nolan (1984),11 Ohio St.3d 1, 3. The rule is necessary to ensure consistency of results, but will not be applied so as to achieve unjust results. Thus, where at a retrial following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law. Nolan, 11 Ohio St.3d at 3.
 {¶ 8} The facts in Hann I and in the second trial were not substantially the same. Evidence concerning Hann's claims for sexual harassment and intentional infliction of emotional distress was, in large part, eliminated due to Hann's failure to appeal those claims. Therefore, evidence of sexual harassment, which potentially may have also supported her claim for retaliation, was missing from the second trial.[2]
Furthermore, this court did not pass upon the merits of Hann's claims inHann I. We simply determined that the trial court erred in Hann I when it gave a confusing answer to the jury's question. A reversal upon one ground alone does not necessarily amount to an implied approval of everything else done in the trial to the extent of establishing the law of the case. Thomas v. Viering (1934), 18 Ohio Law Abs. 343. In addition, Hann's claim for sex discrimination against the township concerns the township's failure to investigate Hann's complaint for retaliation. We, therefore, conclude that the law of the case doctrine does not apply.
 Directed Verdict Standard {¶ 9} Whether a trial court properly granted or denied a motion for a directed verdict presents a question of law, which we review de novo.Schafer v. RMS Realty (2000), 138 Ohio App.3d 244, 257. Civ.R. 50(A)(4) provides:
 {¶ 10} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 11} In ruling on a motion for directed verdict, a court must neither consider the weight of the evidence nor the credibility of the witnesses. Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284. Thus, "if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied." Kellerman v. J.S.Durig Co. (1964), 176 Ohio St. 320.
 Retaliation {¶ 12} Ohio law prohibits retaliating against an employee who has filed a claim with the Ohio Civil Rights Commission ("OCRC"). R.C. 4112.02 provides that
 {¶ 13} "It shall be an unlawful discriminatory practice:
 {¶ 14} "* * *
 {¶ 15} "(I) For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07
of the Revised Code."
 {¶ 16} Case law interpreting and applying Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S. Code is generally applicable to cases involving R.C. Chapter 4112. Ohio Civ.Rights Comm v. David Richard Ingram, D.C., Inc. (1994), 69 Ohio St.3d 89,93. To determine whether the trial court correctly ruled on appellees' motion for a directed verdict, we employ the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 802-803,93 S.Ct. 1817, 36 L.Ed.2d 668. See Peterson v. Buckeye Steel Casings
(1999), 133 Ohio App.3d 715, 727. In order to establish a prima facie case for retaliation, three elements must be shown: (1) that the plaintiff engaged in a protected activity; (2) that the plaintiff was subjected to an adverse employment action; and (3) that a causal link exists between a protected activity and the adverse action. Peterson,
supra. Once a plaintiff successfully establishes a prima facie case, it is the defendant's burden to articulate a legitimate reason for its action. Id. If the defendant meets its burden, the burden shifts back to the plaintiff to show that the articulated reason was a pretext. Id.
 {¶ 17} In this case, it is undisputed that Hann engaged in a protected activity by filing a complaint with the OCRC. Therefore, we must examine whether there was substantial competent evidence of an adverse employment action and a causal link to the protected activity.
 {¶ 18} Whether an employment action gives rise to an adverse employment action is to be determined on a case-by-case basis. Tessmerv. Nationwide Life Ins. Co. (Sept. 30, 1999), 10th Dist. No. 98AP-1278. The Sixth Circuit has stated that an adverse employment action involves "significantly diminished material responsibilities," including "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished responsibilities, or other indices that might be unique to a particular situation." Kocsis v. Multi-Care Mgmt. (C.A. 6, 1996), 97 F.3d 876, 886. The adverse action need not result in pecuniary loss, but must materially affect the terms and conditions of the plaintiff's employment. Peterson, supra. Changes in employment conditions that result merely in inconvenience or an alteration of job responsibilities are not disruptive enough to constitute an adverse employment action. Kocsis, supra.
 {¶ 19} Hann alleges that she suffered an adverse employment action because she was constructively discharged. Constructive discharge does qualify as an adverse employment action. See Hoon v. Superior Tool Co.
(Jan. 24, 2002), 8th Dist. No. 79821; Policastro v. NorthwestAirlines, Inc. (C.A. 6, 2002), 297 F.3d 535, 539. "The test for determining whether an employee was constructively discharged is whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign." Mauzy v. Kelly Services, Inc. (1996), 75 Ohio St.3d 578, paragraph four of the syllabus.
 {¶ 20} In applying this test, "courts seek to determine whether the cumulative effect of the employer's actions would make a reasonable person believe that termination was imminent. They recognize that there is no sound reason to compel an employee to struggle with the inevitable simply to attain the `discharge' label. No single factor is determinative. Instead, a myriad of factors are considered, including reductions in sales territory, poor performance evaluations, criticism in front of co-employees, inquiries about retirement intentions, and expressions of a preference for employees outside the protected group." Id. at 589. A finding of constructive discharge "requires an inquiry into both the objective feelings of an employee, and the intent of the employer. A constructive discharge exists if working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Yates v. AvcoCorp. (C.A. 6, 1987), 819 F.2d 630, 636-37 (citations omitted). A plaintiff must show that the employer intended and could reasonably have foreseen the impact of its conduct on the employee. Id.
 Trial Evidence {¶ 21} Here, Hann claims that McClung and the township engaged in three acts of retaliation against her, which culminated in her being constructively discharged: file stuffing; requiring her to go through retraining; and stripping her of her badge and gun.
 File Stuffing {¶ 22} Hann went on medical leave and filed a complaint with the OCRC in June 1997, alleging sexual harassment against McClung and other unnamed officers. McClung called a departmental meeting to discuss the complaint. At that meeting, he requested that officers and dispatchers write down any complaints about Hann. After receiving several statements, McClung sent them to the township trustees. The trustees, however, testified at trial that they had not looked at Hann's personnel file and were not aware of the statements.
 {¶ 23} Four of the statements placed in Hann's personnel file detailed conversations in which Hann made sexual references or used "rough" language. These statements did not pertain to Hann's ability as a police officer. Officer Donald testified that he provided one such statement to McClung in order to defend himself on the chance he was included in Hann's OCRC complaint. An incident report by Lieutenant Douglas detailed Hann's confrontation with McClung after she learned that she would have to go through retraining. He characterized her attitude as inappropriate and insubordinate. A final statement by Corporal Parthemore, which contained some criticism of Hann's police work, will be discussed below. At trial, Hann disputed the factual content of these statements.
 {¶ 24} When Hann learned that a negative review had been placed in her file after she went on medical leave, she immediately requested to see her personnel file, which she was able to do two days later. In it, she discovered the existence of the six statements. After reviewing the statements, Hann testified that she feared for her safety because she believed that her fellow officers were setting her up to be fired. Hann went back on medical leave two days after seeing her personnel file.
 Retraining {¶ 25} Upon returning from her first medical leave on September 2, 1997, Hann was told that her probationary period would be extended by the number of days she had been off. McClung also informed her that she would have to go through retraining because Corporal Parthemore had given her a negative review and because the FTO training program policy required it after an extended medical leave. When Hann asked Sergeant Matthews, the person assigned to be her training officer, about the retraining requirements, he stated that he did not know or decide yet what they would be. Hann testified that she spent two days retraining with Sergeant Matthews and that "things did not go well."
 {¶ 26} Hann argues that her belief that she was setting up to be fired was reasonable given the subjective nature of her retraining and that neither of the reasons McClung gave her for her retraining were valid. Corporal Parthemore testified that his memorandum was not an actual evaluation. In the document, he stated that Hann had left on medical leave before he could conduct her review. He did, however, criticize Hann's police work in responding to a suicide call, in taking someone to the wrong Volunteers of America office, and in asking for assistance too much for things such as traffic citations. Parthemore testified that he included these criticisms because he felt he needed to memorialize them so he would not forget them since he did not know how long Hann would be on medical leave.
 {¶ 27} Hann also argues that she was only on medical leave for 70 — 80 days, an insufficient length of time to be required to go through retraining. The FTO policy does mandate retraining under certain circumstances. It states:
 {¶ 28} "I. Purpose
 {¶ 29} "A. The Perkins Township Police Department's Field Training and Evaluation Program (FTO) is a part of the police selection process that combines pre-field training with objective evaluations to ensure that standards of a competent police officer are met.
 {¶ 30} "B. The Field Training Program shall also be utilized to provide retraining and orientation to sworn officers returning to patrol from extended absences or other assignments.
 {¶ 31} "1. Sworn officers who have been out of the patrol division for a period of more than 112 calendar days but less than 169 days shall be assigned to a FTO for a two (2) week period.
 {¶ 32} "2. Sworn officers who have been out of the patrol division for a period of 169 calendar days or more will be assigned a FTO for a four (4) week period.
 {¶ 33} "During the time such sworn officers are assigned with a FTO, they will be subject to the formalized evaluations required by recruit officers in training. The FTO will re-familiarize the officers with all departmental forms; any new General Orders or Patrol Orders; etc., in conjunction with the Lieutenant to ensure that the returning officer be provided such opportunities as are necessary to meet or receive certification or proficiency in skill areas such as Firearms, changes in the laws, etc."
 {¶ 34} Nevertheless, the FTO policy allows for discretion on the part of the department:
 {¶ 35} "IV. Extension of Training
 {¶ 36} "A. Any FTO training step and/or probationary period may be extended for the recruit at the discretion of the Department.
 {¶ 37} "B. Sworn officers returning to the patrol division after an extended absence or assignment, may receive such extensions of retraining and/or orientation as are felt to be necessary in the judgement [sic] of the Chief of Police, Lieutenant, and FTO Supervisor."
 {¶ 38} Under the FTO policy if "[a]t any time during the FTO training stage a recruit is not performing at a satisfactory level, a recommendation for termination may be initiated." The policy further provides that the "Perkins Township Trustees and the Chief of Police will make the final decision reference dismissal."
 {¶ 39} McClung testified that he has the authority to issue counseling or oral reprimands and written reprimands. He stated that anything beyond a written reprimand, such as suspension, reduction in rank, demotion, or firing, is decided by the township trustees. He also testified that more experienced male officers who had been on medical leave for an extended period of time had also been required to go through retraining, but did not state how long those officers had been on medical leave.
 {¶ 40} Hann acknowledged on cross-examination that McClung told her that the trustees, not he, had decided that her probation was going to be extended. Hann contends that McClung told her that the township trustees follow his recommendations, although she presented no evidence that McClung recommended to the township that her probation period be extended or that she receive retraining.
 Request for Return of Badge and Gun {¶ 41} Hann testified that when she had gone on medical leave in June 1997, and again in September 1997, no one had requested that she turn in her badge and gun. After going on medical leave for the second time on September 7, 1997, Hann filed a complaint under the new sexual harassment policy. Dissatisfied with those proceedings, she filed a civil lawsuit in January 1998. Three weeks later, Hann received a request to turn in her badge and gun. McClung testified that he was not directly involved in making this request. Hann believed that as a result of the request she had been discharged, although the letter from the township did not state she was terminated. Hann did retain her uniforms and bulletproof vest. She also acknowledged on cross-examination that she continued to submit medical leave forms until July 13, 2001. Hann testified she did this because of the pending litigation.
 Trial Court's Decision {¶ 42} Based upon the evidence in Hann's case in chief, the trial court found that Hann did not establish that she had sustained an adverse employment action. The trial court stated that file stuffing by itself does not amount to an adverse employment action and that the evidence as a whole did not amount to constructive discharge. The trial court found that it was reasonable for McClung to gather reports related to the sexual harassment charges and that, more importantly, no action was taken against Hann because of them. With regard to constructive discharge, the trial court stated that, although the F.T.O. policy did not specifically require Hann to be retrained, this retraining was not such an intolerable situation that a reasonable person would find it offensive. The trial court then granted a directed verdict to McClung and the township on Hann's retaliation claims.
 {¶ 43} After reviewing the evidence, we agree with the trial court that Hann has failed to show that she was subjected to an adverse employment action. The "negative" statements in Hann's personnel file, by themselves, do not represent an adverse employment action. See Smart v.Ball State Univ. (C.A. 7, 1996), 89 F.3d 437, 442 (negative evaluations alone do not constitute an actionable adverse employment action.); Tademev. St. Cloud State Univ. (C.A. 8, 2003), 328 F.3d 982, 992 (claim that college retaliated against professor by "papering" his file with false allegation failed as a matter of law because professor failed to show college took any adverse action because of allegations.) While there is some evidence that one of the "negative" statements was used to justify the decision for retraining, Hann has not shown how such retraining materially affected the terms and conditions of her employment. There is no evidence that retraining significantly diminished her job responsibilities, caused a material loss of benefits, decreased her wage or salary, or changed the hours she was required to work. The only apparent difference between her regular employment and employment under retraining was that Sergeant Matthews rode with her. While Hann complains that she was not told what the objective criteria for her retraining would be, and that she, therefore, could have been terminated at appellees' discretion for failure to pass retraining, there was also evidence that appellees already held identical discretion over her employment because she was a probationary officer. In addition, the request to turn in her badge and gun also did not materially alter the terms and conditions of her employment. When the township requested her gun and badge, Hann had not been functioning as a police officer for over four months because she had been on medical leave. It is not unreasonable for an employer to request the return of its property when an employee is on medical leave for an unspecified duration. See Lee-Crespo v.Schering-Plough Del Caribe, Inc. (C.A. 1, 2003), 354 F.3d 34, 46 (There was nothing unreasonable or harassing in asking employee to return company car and other equipment when employee did not know when she would return from medical leave.)
 {¶ 44} We also agree with the trial court that the cumulative effect of these factors does not rise to the level of constructive discharge. Hann relies heavily on her subjective fear for her safety after reading the statements in her personnel file and on her belief that she was being set up to be fired. Courts, however, apply an objective test when determining whether a constructive discharge has occurred. See Mauzy,75 Ohio St.3d at 588. Part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast. Mayo v. Kenwood Country Club, Inc. (1999), 134 Ohio App.3d 336,341, citing Garner v. Wal-Mart Stores, Inc. (C.A. 11, 1987), 807 F.2d 1536,1539. An employee's perception that he was forced to resign must be judged without consideration of his or her undue sensitivities. Id. Hann testified that she also feared for her safety before going on medical leave the first time. Nevertheless, two weeks before she went on medical leave in June 1997, there was evidence that two officers rushed to her assistance when a suspect became belligerent. It does not seem reasonable, therefore, for Hann to assume that other officers would not come to her assistance simply because "negative" statements were placed in her personnel file.
 {¶ 45} Hann failed to present evidence of egregious working conditions upon return from medical leave in September 1997. While she may not have liked having Sergeant Matthews ride with her, and was angry about the statements placed in her personnel file, this does not amount to a situation where working conditions were so intolerable that a reasonable person would have felt compelled to resign. Not everything that makes an employee unhappy is an actionable adverse action. Manning v. MetropolitanLife Ins. Co. Inc. (C.A. 8, 1997), 127 F.3d 686, 692, quoting Montandonv. Farmland Indus., Inc. (C.A. 8, 1997), 116 F.3d 355, 359. Even when the surrender of her badge and gun while on medical leave is added to this, we find that reasonable minds could come to but one conclusion on the issue of retaliation, and that the conclusion is adverse to Hann.
 Discrimination {¶ 46} Finally, Hann contends that the trial court erred in dismissing her claim for sexual discrimination against the township because there is substantial, competent evidence that the township failed to follow its own sexual discrimination policy in investigating her complaint of retaliation. Her complaint under the Perkins Township Sexual Harassment Policy and Procedures addressed three issues: 1) the alleged sexual harassment by Sergeant Matthews which is not at issue in this appeal; 2) the incident report dated 9/2/97 by Lieutenant Douglas; and 3) the negative statements by fellow officers placed in her personnel file. The investigator and the township trustees acknowledged at trial that they did not look into the incident report and other statements placed in Hann's file.
 {¶ 47} To establish a prima facie case of discrimination, a plaintiff must show (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action; and (4) replacement by a non-protected person. McDonnell Douglas Corp., supra at 802. "A plaintiff can also make out a prima facie case by showing, in addition to the first three elements, that `a comparable non-protected person was treated better.'" Mitchell v. Toledo Hosp. (C.A. 6, 1992), 964 F.2d 577, 582. As we have already stated, the two remaining aspects of Hann's complaint do not constitute an adverse employment action. While the township may have failed to fully investigate her claims, Hann has not shown that she suffered any discrimination because of it. We, therefore, find that reasonable minds could come to but one conclusion, and that the conclusion is adverse to Hann.
 Conclusion {¶ 48} In summary, we find the sole assignment of error is not well-taken. The judgment of the Erie County Court of Common Pleas is affirmed. Appellant is ordered to pay costs of this appeal.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Knepper, J., Lanzinger, J. concur.
[1] Besides McClung and the township, also named in the complaint were Sergeant Adolphus Matthews and Detective John Maguire.
[2] Hann attempted to elicit from Sergeant Matthews what occurred during her retraining. Defense counsel objected on the basis that the jury in Hann I found in favor of Sergeant Matthews on the sexual harassment complaint. Hann's inquiry was then limited to what transpired after she filed a formal complaint under the sexual discrimination policy. Hann did not appeal this issue.