**Linda A. SCARBOROUGH, Gracie Myrick, Charlotte Roberson, Cathy D. Walker, Tina J. Lowery, and Jo Ellen Spurgeon, Plaintiffs,**

**v.**

**BROWN GROUP, INC. d/b/a Brown Shoe Company; Billy Spellings and Nelson Siler, Defendants.**

**No. 95-1150.**

United States District Court,
W.D. Tennessee,
Eastern Division.

March 11, 1997.

Thomas Strawn, Dyersburg, TN, for Plaintiffs.

Randy Chism, Union City, TN, James N. Foster, Jr., St. Louis, MO, for Defendants.

TODD, District Judge.

## ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

The six Plaintiffs in this Title VII sexual harassment action are former employees of the Defendant, Brown Group, Inc., d/b/a Brown Shoe Company. Plaintiffs filed suit against the employer, and also against supervisor Billy Spellings and general manager Nelson Siler. In a previous order, *see* 935 F.Supp. 954 (W.D.Tenn.1995), the court dismissed certain causes of action. The claims remaining are the Title VII claims against the employer, the outrageous conduct claims against Spellings, and Plaintiff Myrick's intrusion claim against Spellings. Defendants have filed motions seeking summary judgment on these remaining claims.[1] Plaintiffs have responded to the motions.

Motions for summary judgment are governed by Fed.R.Civ.P. 56. If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Fed.R.Civ.P. 56(c). The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The opposing party may not rest upon the pleadings but must go beyond the pleadings and "by affidavits or as otherwise provided in this rule, must set

1. Defendants have filed five separate motions for summary judgment as to the claims of: 1) Plaintiff Linda A. Scarborough; 2) Plaintiff Gracie Myrick; 3) Plaintiffs Charlotte Roberson and Tina J. Lowery; 4) Plaintiff Cathy D. Walker; and 5) Plaintiff Jo Ellen Spurgeon.

forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552.

"If the defendant ... moves for summary judgment ... based on the lack of proof of a material fact, ... [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). However, the court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter but only to determine whether there is a genuine issue for trial. *Id.* at 249, 106 S.Ct. at 2510–11. Rather, "[t]he inquiry on a summary judgment motion ... is ... 'whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'" *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989) (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512). Doubts as to the existence of a genuine issue for trial are resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

## *TITLE VII CLAIMS*

### *Arbitration/Grievance Procedure*

Defendant Brown Group, Inc., ("Brown Group") first argues that all of Plaintiffs' Title VII claims must be dismissed because Plaintiffs did not utilize and exhaust the grievance/arbitration procedure under the collective bargaining agreement covering their employment. In support of this argument, Brown Group relies upon *Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305 (6th Cir.1991), and *Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875 (4th Cir.1996). Both these cases follow the decision of the United States Supreme Court in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In *Gilmer,* an age discrimination case, the Supreme Court held that agreements to arbitrate such statutory claims are enforceable. *Id.* at 26, 111 S.Ct. at 1652. *Willis* and *Austin* apply the holding in *Gilmer* to claims brought under Title VII and the Americans with Disabilities Act. *Austin,* 78 F.3d at 879–86; *Willis,* 948 F.2d at 307–10. *Austin* specifically involved an arbitration clause contained in a collective bargaining agreement.

Although a valid arbitration agreement covering Plaintiffs' Title VII claims would appear to be enforceable under *Gilmer* and its progeny, the record in this case contains no evidence that such an agreement existed. A portion of the collective bargaining agreement submitted by Brown Group, consisting of part of Article XIII, "Grievances" provides, in relevant part:

> *Section 1. (A) General Procedures.* Grievances shall be signed and presented by the complaining employees to the Shop Steward in the department who shall present them in writing to the Foreman of the department immediately. If any grievance is not adjusted by this procedure, the Shop Steward, accompanied by the Business Agent shall then take the matter up with the Plant Manager. No such written grievance shall be submitted to the Plant Manager unless it has been investigated and approved by the Executive Board or Plant Union Committee of the Union.... If the grievance is not settled by these negotiations with the Plant Manager, then the Executive Board or Plant Union Committee of the Union shall designate representatives to negotiate with the Plant Manager or such other representatives of the Company as shall be designated by the Company for such purpose.
>
> Individual claims for benefits under the Health and Welfare, Life and Pension Plan will not be subject to the Grievance Procedure inasmuch as claims procedures covering such individual matters are specified in those plans.
>
> All grievances, other than those with specific time limits for filing mentioned elsewhere in this Agreement must be filed within 30 calendar days of the event which caused the grievance.
>
> *(B) Appeals Notification.* The Union shall be allowed ninety (90) days after answer has been made ... on any grievance to ask for a meeting with representa-

tives of the St. Louis Office for purposes of reviewing said answer or answers....

In contrast to the language used in the collective bargaining agreement at issue in *Austin,* this language does not specify the types of disputes, if any, that *must* be presented through the grievance procedure.[2] Article XVII, entitled "Equal Employment Opportunity" is merely a statement that there shall be no discrimination because of race, religion, color, origin, sex, age, physical or mental handicap. It is not a requirement that such claims be grieved. Furthermore, these portions of the collective bargaining agreement quite simply do not contain any type of arbitration clause, binding or otherwise. Thus, Plaintiffs' claims are not subject to dismissal for failure to exhaust the grievance/arbitration procedure.

*Plaintiffs Linda Scarborough, Gracie Myrick and Jo Ellen Spurgeon*

Brown Group next argues that the claims of Plaintiffs Linda A. Scarborough, Gracie Myrick, and Jo Ellen Spurgeon are barred by the statute of limitations because Plaintiffs failed to file timely administrative charges with the EEOC/THRC. In Tennessee, which is a "deferral" state, such charges generally must be filed within three hundred days of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1). Two exceptions to this rule are the continuing violation doctrine and the single-filing rule. In its previous order, the court ruled that Scarborough and Myrick had stated a claim under the continuing violation doctrine, and that Spurgeon had stated a claim under the single-filing rule. 935 F.Supp. at 959-60. Brown Group contends, however, that summary judgment is now appropriate because Plaintiffs have failed to set forth facts showing the existence of a genuine issue for trial regarding whether the claims are barred because the administrative charges were untimely.

Under the continuing violation doctrine, where there is a continuous pattern of discrimination, an administrative charge is timely if at least one of the acts complained of occurred within the three hundred day limitations period. *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 380-81, 102 S.Ct. 1114, 1125-26, 71 L.Ed.2d 214 (1982); *Gallagher v. Croghan Colonial Bank,* 89 F.3d 275, 278 (6th Cir.1996); *Haithcock v. Frank,* 958 F.2d 671 (6th Cir.1992); *Hull v. Cuyahoga Valley Joint Vocational School District Bd. of Educ.,* 926 F.2d 505, 510-11 (6th Cir.), *cert. denied,* 501 U.S. 1261, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991).

Scarborough's administrative charge of discrimination alleges that Spellings sexually harassed her from June, 1980, through June 20, 1994. The charge was filed on March 3, 1995; therefore, in order to render the charge timely there must be some evidence of at least one act occurring after May 7, 1994. However, in her deposition Scarborough admitted that no harassment occurred after April 10, 1994. (Scarborough Dep. at 72.) Thus, Scarborough clearly has failed to establish a genuine issue of fact regarding whether her charge was timely filed.

Myrick's administrative charge of discrimination, also filed March 3, 1995, alleges a period of sexual harassment by Spellings from 1970 through December 19, 1994. Although Myrick testified in her deposition that Spellings' sexual harassment was continuous throughout the years, her testimony regarding the actual dates of the alleged harassment is very vague and unclear, and she could not specifically identify any such harassment occurring after May 7, 1994. Myrick testified that she could not give specific examples of conduct of a sexual nature by Spellings in either 1992, 1993, 1994, or 1995. (Myrick Dep. at 58-60.)

2. The bargaining agreement at issue in *Austin* provided, in an Article entitled "Fair Employment Practice and Equal Opportunities":

1. The Company and the Union will comply with all laws preventing discrimination against any employee because of race, color, religion, sex, national origin, age, handicap, or veteran status.

....

3. Any disputes under this Article as with all other Articles of this Contract shall be subject to the grievance procedure.

The agreement in *Austin* also specifically provided, in an Article entitled "Arbitration", that all disputes not settled pursuant to the grievance procedure were subject to final and binding arbitration.

The only incidents that Myrick testified definitely occurred during the limitations period did not involve conduct or speech of a sexual nature. On January 9, 1995, Myrick asked Spellings for a day off, and he allegedly asked her what she would give him in return. (Myrick Dep. at 34.) Myrick admitted that the comment was not sexual in nature, but that she took it that way. (Myrick Dep. at 35.) As for another incident that Myrick alleges occurred on December 19, 1994, she complains only that Spellings told the union chief steward that she was a liar; nothing of a sexual nature was involved. (Myrick Dep. at 36–40.) Therefore, the court finds that Myrick has failed to demonstrate the existence of a genuine issue of fact regarding whether any acts of sexual harassment occurred after May 7, 1994, within the applicable limitations period.

Both Scarborough and Myrick have failed to establish that their administrative charges were timely filed. Nevertheless, their Title VII claims are not necessarily barred if the single filing rule can be invoked to save them. Spurgeon's claims are in this posture as well, as it is clear from the allegations in the complaint that her administrative charge was untimely.

The single filing rule was recognized by the Sixth Circuit in *Equal Employment Opportunity Comm'n v. Wilson Metal Casket Co.*, 24 F.3d 836 (6th Cir.1994). The rule allows the administrative charge of one plaintiff to satisfy the charge filing obligations of other plaintiffs under certain circumstances. *Id.* Brown Group argues, however, that the rule is intended to apply only to those claimants who fail to file administrative charges, not to those who file charges that are ruled untimely. This argument was rejected by the Sixth Circuit in *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189 (6th Cir.1995). The court stated:

> The single filing rule serves to prevent a wooden application of the administrative charge requirement where the ends of the requirement have already been satisfied. The purpose of the single filing rule is no less well served in application to a potential plaintiff who has filed an untimely EEOC charge than to one who has never filed an administrative charge. A potential plaintiff who has filed an untimely EEOC charge is not given any more of a "second bite at the apple" than any plaintiff who brings a civil action under [Title VII] after filing an EEOC charge.

*Id.* at 196–97.

In order to "piggyback" on a timely filed charge, a claim must be substantially related, arising out of similar discriminatory treatment occurring in the same time frame. *Wilson Metal Casket*, 24 F.3d at 840. This is because an administrative charge must contain "sufficient information to notify prospective defendants of their potential liability and permit the EEOC to attempt informal conciliation of the claims before a lawsuit is filed." *Howlett*, 49 F.3d at 195; *Equal Employment Opportunity Comm'n v. Sara Lee Corp.*, 923 F.Supp. 994, 998–99 (W.D.Mich.1995).

The court finds that the administrative charges filed by Plaintiffs Charlotte Roberson and Tina Lowery cannot serve as the basis for the untimely claims filed by Scarborough, Myrick, and Spurgeon. The timely charges filed by Roberson and Lowery each involve allegations of harassment by a co-worker, not by Spellings. Thus, the charges do not arise out of similar discriminatory treatment, and are not substantially related to the claims of Scarborough, Myrick, and Spurgeon. The timely charges could not have provided sufficient notice to Brown Group of potential liability, or to the EEOC to permit conciliation of the untimely claims. *Howlett*, 49 F.3d at 195.

Scarborough, Myrick and Spurgeon also cannot piggyback upon the timely charges filed by Plaintiff Cathy D. Walker. As stated, Scarborough admitted in her deposition that she was not sexually harassed after April 10, 1994, (Scarborough Dep. at 72), and Myrick has failed to set forth disputed facts showing any specific acts of harassment occurring after 1991. Similarly, Spurgeon concedes in her deposition that she was not sexually harassed by Spellings after she was rehired by the company in June, 1993. (Spurgeon Dep. at 91.)

The timely charge filed by Walker alleges sexual harassment by Spellings during a period beginning May 3, 1994. The evidence in the record shows that Spellings' harassment

of Scarborough, Myrick, and Spurgeon had ended prior to that date. Therefore, the claims did not arise during the same time frame as those of Walker, and are not substantially related. Again, Walker's charge would not have provided sufficient notice to Brown Group or the EEOC of the untimely claims.

Under the requirements of the single filing rule, the timely administrative charges filed by Roberson, Lowery, and Walker are inadequate to support the claims filed by Scarborough, Myrick, and Spurgeon. Therefore, the untimely claims are barred by the statute of limitations, and Brown Group is entitled to summary judgment on the Title VII claims of Scarborough, Myrick, and Spurgeon.

Although the EEOC charges filed by Roberson, Lowery, and Walker were timely, Brown Group contends, nevertheless, that it is also entitled to summary judgment on their Title VII claims. Under Title VII, an employer may not lawfully "discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1). The "terms, conditions, and privileges of employment" may include requiring a person to work in a discriminatorily hostile or abusive environment. *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986).

A plaintiff asserting a sexual harassment hostile environment claim must allege and prove that she was a member of a protected class, that she was subject to unwelcome sexual harassment, that the harassment was based on sex, that the harassment created an intimidating, hostile, or abusive work environment, and the existence of employer liability. *Fleenor v. Hewitt Soap Co.,* 81 F.3d 48, 49 (6th Cir.1996); *Rabidue v. Osceola Refining Co.,* 805 F.2d 611, 619–20 (6th Cir. 1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987).

*Plaintiff Charlotte Roberson*

Plaintiff Roberson filed a charge of discrimination on May 13, 1994, claiming that she was sexually harassed when she was improperly touched by a co-worker, Dwayne Frazier, on April 19, 1994. Roberson also claimed that she immediately reported the incident to the union steward, and to Spellings, who merely laughed at her and walked away. Roberson claimed that she was retaliated against when Spellings met with her the next day and accused her of making similar accusations regarding a former employer. Spellings also allegedly stated that he was not going to fire Frazier, and that he could cause trouble between Roberson and her husband. Roberson also claims in her charge that she was taunted by co-workers because she reported Frazier's actions. Roberson's charge alleges that she was terminated on April 22, 1994, which the court construes as an allegation of constructive discharge, as the evidence shows that Roberson was not actually terminated.

In the complaint filed in this action, Roberson includes allegations concerning the Frazier incident. She also alleges that after she reported that incident, "management personnel" subjected her to embarrassment, humiliation, and verbal abuse before her co-workers, and denied her privileges that were granted to other employees. Roberson further alleges that when it "became apparent" that the Frazier incident was not going to be properly handled, the working environment became hostile and she voluntarily terminated her employment on April 21, 1994. (Compl.¶ 28–29.)

The court first notes that Roberson's complaint does *not* allege that she was sexually harassed by Spellings.[3] The complaint also does not contain allegations that she was sexually harassed by any co-workers other than Frazier. Therefore, such claims are not properly before the court and will not be addressed, notwithstanding any attempts by Roberson to raise such issues in her deposition or in her response to the motion for summary judgment.

Brown Group first contends that Roberson has failed to demonstrate a genuine issue of

3. In her EEOC charge, Roberson indicates that Spellings once asked her if she cheated on her husband. The charge appears to allege that this occurred the day after the Frazier incident, but in her deposition Roberson testified that it occurred eight days prior, on April 11, 1994. However, these facts are not alleged in the complaint.

material fact regarding the existence of employer liability. In the case of harassment by a co-worker such as Frazier, an employer is liable "for acts of sexual harassment in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action." 29 C.F.R. § 1604.11(d); *Fleenor*, 81 F.3d at 50; *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 804 (6th Cir.1994).

In this case, there is evidence in the record that when Roberson reported Frazier's conduct to Spellings on the day of the incident, he laughed at her and walked away. (Roberson Dep. at 20–21.) There is also evidence that the day after the incident Spellings accused Roberson of making similar accusations on a prior occasion, threatened to cause trouble with Roberson's husband if she did not drop the charges, threatened to give her job to someone else, and asked one of Roberson's co-workers to also try to persuade Roberson to drop the charges. (Roberson Dep. at 22–23, 32–34.) Although it is undisputed that Frazier was ultimately given a written reprimand on May 27, 1994, Spellings' initial conduct and the delay in issuing the reprimand are sufficient to create a genuine issue of material fact regarding whether the action taken was appropriate.

Brown Group also contends, however, that Roberson has failed to demonstrate a genuine issue of material fact regarding whether the alleged harassment was sufficiently severe or pervasive to constitute a hostile environment. In *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the Supreme Court reaffirmed that a Title VII violation occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." 510 U.S. at 21, 114 S.Ct. at 370 (quoting *Meritor*, 477 U.S. at 65 & 67, 106 S.Ct. at 2405). The Court explained that this standard contains both objective and subjective elements. The conduct must be severe or pervasive enough that a reasonable person would find the environment hostile or abusive, and the victim must also subjectively perceive the environment to be abusive. *Id.* "This standard takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Id.*

The *Harris* Court stated that whether an environment is hostile must be determined by looking at all the circumstances. Relevant circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. at 371. In this case, the *only* incident of sexual harassment alleged in Roberson's complaint is Frazier's inappropriate touching, or grabbing, of her posterior. The undisputed facts bear this out. Clearly, this was an isolated incident of sexual harassment, not the type of "severe or pervasive" conduct that a reasonable person would consider a hostile or abusive working environment.

Roberson also alleges that she was constructively discharged in retaliation for reporting Frazier's harassment.[4]

> A constructive discharge claim requires "an inquiry into both the objective feelings of the employee, and the intent of the employer." A constructive discharge exists if "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."
>
> ... We have also required some inquiry into the employer's intent and the reasonably foreseeable impact of its conduct on the employee."

4. Defendant argues that Roberson's complaint does not contain a retaliation or constructive discharge claim. However, Roberson alleges that she voluntarily terminated her employment after she complained of Frazier's conduct, because it "became apparent that Frazier's offensive behavior, comments, and language were not going to be properly dealt with by management personnel." Although these allegations are somewhat general, the court finds that Roberson has stated a claim that she was constructively discharged in retaliation for opposing Frazier's harassment of her. (Compl.¶ 28.)

Yates v. Avco Corp., 819 F.2d 630, 636–37 (6th Cir.1987) (citations omitted). *See also Wheeler v. Southland Corp.,* 875 F.2d 1246, 1249–50 (6th Cir.1989). The issue of constructive discharge is at least partially a question of law. *Yates,* 819 F.2d at 636 (citing *Jacobs v. Martin Sweets Co.,* 550 F.2d 364, 370–71 (6th Cir.), *cert. denied,* 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977)).

As stated, the evidence in the record shows that Spellings initially trivialized Roberson's report of Frazier's conduct by laughing at her. (Roberson Dep. at 20–21.) There is also evidence that the day after the incident, Spellings threatened to cause trouble with Roberson's husband, and made an implied threat to give her job to someone else. (Roberson Dep. at 32–34.) Nevertheless, the court finds that Brown Group is entitled to summary judgment on this issue. The evidence is undisputed that the Frazier incident occurred on April 19, 1994, a Tuesday. Spellings' alleged threats were made on Wednesday. Also on Wednesday, Roberson filed a grievance regarding the incident. Roberson testified in her deposition that on Thursday, two male co-workers taunted her about reporting Frazier, and that plant manager Nelson Siler warned them, also on Thursday, against further such conduct. (Roberson Dep. at 25–30.) Yet, Roberson did not return to work on Friday or thereafter.

The undisputed facts in this case clearly show that a reasonable person in Roberson's shoes would not have felt compelled to resign after only three days. *Wheeler,* 875 F.2d at 1249; *Yates,* 819 F.2d at 636–37. Furthermore, Brown Group, through its supervisory personnel, would not have foreseen that Roberson would feel constructively discharged in such a short time. *Id.* "To act reasonably, an employee has an obligation not to assume the worst and not to jump to conclusions too quickly. An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged." *Tidwell v. Meyer's Bakeries, Inc.,* 93 F.3d 490, 495 (8th Cir.1996). In this case, Roberson did not give her employer that chance.

The court concludes that Brown Group is entitled to summary judgment on Roberson's Title VII claims.

*Plaintiff Tina Lowery*

Plaintiff Lowery filed a charge of discrimination on March 14, 1995, apparently claiming that on December 8, 1994, the same co-worker, Dwayne Frazier, pinched her on the buttocks after she asked him to fix the machine on which she was working.[5] Lowery claimed that after the incident she was almost fired by Spellings and plant manager Siler, and that Spellings told Lowery that her co-workers were going to make it hard on her. Lowery also claimed that Spellings refused to let her off work to go to the doctor, and that a box of money was taken up for Frazier. The charge contains the further claim that black co-workers in Spellings' department were given preferential treatment.

In her complaint, Lowery includes allegations regarding the Frazier incident, and alleges that she immediately reported the incident to management. She further alleges that after she complained, Frazier's behavior was not promptly corrected, and that the failure to do so created a hostile environment. (Compl.¶ 43.) Lowery also alleges that, in retaliation for her complaint about Frazier, "management personnel" subjected her to humiliation, embarrassment, and verbal abuse in front of co-workers, and denied her rights and privileges granted to other employees. (Compl.¶ 42.)

As with the allegations made by Roberson, Lowery does not allege in her complaint that she was sexually harassed directly by Spellings, or by co-workers other than Frazier; she also does not allege that she was discharged, constructively or otherwise. Lowery also does not allege in her complaint that any black co-workers were given preferential treatment. Thus, the court will not address such claims.

Brown Group argues that Lowery has failed to demonstrate the existence of facts that would support employer liability for the conduct complained of. Brown Group also

5. The charge, as reflected in Defendant's Deposition Exhibit W, does not actually describe this incident. It merely alleges sexual harassment occurring on December 8, 1994. The attached questionnaire refers to "this incident."

contends that Lowery has failed to demonstrate disputed facts regarding whether a reasonable person would have found the environment discriminatorily hostile or offensive.

The evidence in the record shows that after Frazier allegedly pinched Lowery on December 8, 1994, she immediately reported the incident to the union shop steward, Sue Doolin. (Lowery Dep. at 28.) Lowery and Doolin then informed Spellings of Frazier's behavior. (Lowery Dep. at 29–30.) Frazier was there also, and denied pinching Lowery, calling her a "lying bitch." Frazier stated instead that he had shot Lowery with a rubber band. (Lowery Dep. at 30–31.) Lowery, Doolin, and Spellings then reported the incident to Siler, who indicated that although he didn't feel there had been any real harm, he knew something needed to be done because of the prior incident with Frazier and Roberson. (Lowery Dep. at 33–36.) After that initial meeting, Spellings later called Lowery into his office and told her that he did not want the incident out in the open, and that he would rather have less people involved. (Lowery Dep. at 43, 48.)

The next day, December 9, 1994, Spellings met with Lowery again, in Siler's office; Siler was not present. When Lowery asked for union representation, Spellings stated that he could see they were not on the same side, and that "my girls can make your job a living hell." Lowery left the office at that time. (Lowery Dep. at 51–52.) Three days later, on December 12, 1994, Frazier was given a two-week disciplinary lay-off. On December 14, 1994, Lowery filed a grievance.

Lowery claims that the Frazier incident, in conjunction with several subsequent incidents, created a discriminatorily hostile environment. The later incidents of which she complains include someone passing around a box collecting money for Frazier. It is unclear who initiated the collection, and whether the money was intended to be for a Christmas present. Lowery did not complain to any supervisor about this incident. (Lowery Dep. at 86–88; Puckett Dep. at 390–93; Walker Dep. at 35–39.) On January 3, 1995, Lowery asked Spellings if she could leave work early because she was in the process of moving. Spellings refused, and he and Lowery then went to Siler. Lowery testified that Siler called her a troublemaker and told her that if she left she would be fired. She returned to work, and no further action was taken. (Lowery Dep. at 91.)

On January 26, 1995, Lowery alleges that, although she did not actually hear him make the comment, she believes Spellings whispered to a co-worker, Venita Edmonds, that Lowery was a lesbian. She testified that Edmonds then told other employees; Lowery did not report Edmonds' conduct to anyone in management. (Lowery Dep. at 45–46, 71–72; 94; 113.)

Lowery also complains that in January or February, 1995, Frazier, perhaps deliberately, put a glob of grease on her machine while he was repairing it, causing her to have to wipe it off. Lowery reported this to Spellings. (Lowery Dep. at 60–65.) She further testified that on another occasion in February, 1995, Frazier again called her a "lying bitch," without reason. Lowery did not report his comment to management. (Lowery Dep. at 65–66.)

Lowery further testified that Edmonds sometimes wrongfully returned work to her to be redone, when it actually did not need correcting. In March, 1995, Lowery discussed this with her foreperson, Elaine Johnson,[6] and they agreed that Lowery would be moved into a different department. (Lowery Dep. at 75–82.) After she was transferred, Lowery testified that several black co-workers asked her out or for her phone number. She did not report this to management. (Lowery Dep. at 8–10; 98–101.) Another incident involved Spellings carrying a case of shoes down the aisle toward Lowery. She testified that he began walking quickly as if he was going to run over her with it. Spellings did not actually touch Lowery with the case of shoes. (Lowery Dep. at 109–112.)

The undisputed facts in the record show that Lowery simply was not subjected to sexual harassment that was severe or pervasive enough to create an objectively hostile

6. Elaine Johnson became the fitting department foreperson after Spellings left the plant in March, 1995.

environment. *Harris,* 510 U.S. at 20–22, 114 S.Ct. at 370. Title VII protects only against harassment based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). It does not protect against general harassment, regardless of how severe or pervasive it may be. Of all the incidents of which Lowery complains, those that are at all sexual in nature are extremely few: Frazier briefly pinching her on the buttocks, Edmonds telling other employees she was a lesbian, and co-workers asking her out or for her phone number.

The court finds that under the totality of the circumstances, a reasonable person would not consider these few incidents a hostile or offensive work environment. The incidents were not severe or physically threatening [7], and did not unreasonably interfere with Lowery's work performance. *Id.* at 20–22, 114 S.Ct. at 371. Furthermore, all but the Frazier pinching incident were verbal in nature, and do not appear to have been more than "mere offensive utterance[s]." *Id.*

Even if these few incidents could objectively be considered a hostile environment based on sexual harassment, it is also undisputed that Lowery reported only the Frazier incident to management. An employer is liable for co-worker harassment if the employer knew or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action. *Fleenor,* 81 F.3d at 50; *Pierce,* 40 F.3d at 804. In this case, although Spellings and Siler may have displayed little sensitivity to Lowery's complaint against Frazier, Frazier was given a two week disciplinary lay-off only four days after the incident. Thus, management responded promptly and appropriately to the only incident of sexual harassment of which they were aware.

Lowery has also failed to establish a genuine issue of material fact on her claim that she was retaliated against for complaining about Frazier's behavior. An employer is prohibited from discriminating against employees because they have opposed a practice that is unlawful under Title VII, or because they have made a charge or participated in an investigation or proceeding under Title VII. 42 U.S.C. § 2000e–3(1). In order to establish a prima facie claim of retaliation, a plaintiff must prove 1) that she engaged in activity protected under Title VII; 2) that the employer knew of the plaintiff's exercise of her rights; 3) that the employer thereafter took an employment action adverse to the plaintiff; and 4) that there was a causal connection between the protected activity and the adverse employment action. *Equal Employment Opportunity Comm'n v. Avery Dennison Corp.,* 104 F.3d 858, 860 (6th Cir. 1997); *Canitia v. Yellow Freight Sys., Inc.,* 903 F.2d 1064, 1066 (6th Cir.1990).

In this case, Lowery has failed to establish the third element of her prima facie case. None of the incidents cited by Lowery qualify as adverse employment actions. Although she testified that on one occasion she was refused permission to leave work early, this is not the type of adverse action that will support a retaliation claim.[8] There is no evidence that Lowery was discharged, demoted, disciplined, or reprimanded as a result of her complaint about Frazier. Hostility from fellow employees alone, without more, does not constitute an ultimate employment decision. *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 706–07 (5th Cir.1997).

The court finds that Brown Group is entitled to summary judgment on Lowery's Title VII claims.

*Plaintiff Cathy Walker*

Plaintiff Walker filed a charge of discrimination on February 23, 1995, claiming that she was sexually harassed by Spellings on May 3, 1994, when he approached her when no one else was around and asked her for sex in graphic terms. The charge indicates that Walker told Spellings she didn't want to hear it, and he left. Walker's charge also claims retaliation.

7. Although Frazier's pinching of Lowery may have been tasteless, crude, and annoying, it cannot be considered physically "threatening."

8. Lowery's transfer to another department after Edmonds allegedly returned work to her without reason also does not qualify as an adverse employment action. Lowery testified that she was happy about the transfer. (Lowery Dep. at 82.)

In her complaint, Walker alleges that, beginning in May, 1994, and continuing through December, 1994, Spellings repeatedly propositioned her, requesting sexual intercourse and graphically describing sexual acts. Walker alleges that Spellings requested sexual favors and sexual liaisons, made comments and gestures to her in front of co-workers that were lewd and sexual in nature, verbally abused her in front of co-workers, and denied her rights and privileges granted to other employees because of her rejection of his advances. Walker further alleges in her complaint that Spellings continued his offensive behavior despite her complaints to management personnel and union representatives, and that this constituted a hostile working environment. (Compl.¶ 35–36.)

Brown Group contends that Walker has failed to demonstrate the existence of disputed facts regarding whether a reasonable person would have found the working environment discriminatorily hostile or offensive. Brown Group also argues that even if a hostile environment was created, Walker has failed to demonstrate the existence of facts that would support employer liability for Spellings' conduct.

In Walker's deposition, she testified that on May 3, 1994, when she was alone in the fitting department, Spellings approached and sat down in front of her machine. Spellings told Walker he would like to go to bed with her. He continued, saying that he liked a lot of foreplay, and that he "liked it on the top where he could have the control." (Walker Dep. at 26–27.) Walker told Spellings to leave her alone, she did not want to hear it; he then got up and walked away. (Walker Dep. at 27, 45–46.) Spellings did not touch Walker in any way, at that time or any other time. (Walker Dep. at 27.)

The next incident described by Walker as an incident of harassment occurred on or about May 13 or May 15, 1994. Walker testified that Spellings told the "floor lady" in Walker's department that Walker was to have only one break that day. Walker thought Spellings "just acted like he was picking on me because I wouldn't go to bed with him." (Walker Dep. at 28.) Spellings apparently indicated that his reason for giving Walker only one break was that she was doing a new job, and her production was not sufficient. (Walker Dep. at 28–29.) Spellings did not say anything to Walker of a sexual nature on that occasion. (Walker Dep. at 29.)

The third incident of which Walker complains occurred on November 15, 1994. On the evening of November 14, 1994, Walker had attended a basketball game, which Spellings also happened to attend. Although nothing apparently occurred that evening, the next day at work Spellings approached Walker and said that she should have told him her husband wasn't going to be at the basketball game with her. Spellings stated that he could have met her somewhere on the way to the game, and asked "does your husband always let you go places without him?" (Walker Dep. at 30–34.) Spellings did not say anything overtly sexual in nature, but Walker testified that she knew what he meant. (Walker Dep. at 31.) After Walker told Spellings that she was a grown person and did not need her husband to go everywhere with her, Spellings said nothing else. (Walker Dep. at 32.)

According to Walker's deposition, the last event she considered harassing in nature occurred sometime during the first two weeks of December, 1994. Walker testified that someone passed around both a petition in support of Dwayne Frazier, and a box collecting money for him (this was following Roberson's complaint against Frazier for pinching her). (Walker Dep. at 35.) She believes that Spellings either initiated these events or approved them, but admits that she is only guessing about that. (Walker Dep. at 35–36.)

Walker testified that she felt that the petition and the collection of money for Frazier was inappropriate because Frazier had been charged with sexual harassment. (Walker Dep. at 37–40.) Walker recognized, however, that her co-workers who were Frazier's friends believed he had done nothing wrong. (Walker Dep. at 39–40.) Walker also testified that when she took her name off the petition, Spellings got angry, and said "I will remember the ones that stood up for Dwayne Frazier, you can count on it." (Walker Dep. at 35, 43.) She admits, however, that Spellings never took any kind of action against her after that statement. (Walker Dep. at 43.)

These four incidents are the only ones Walker relies upon to support her claim that a discriminatorily hostile working environment existed. The facts surrounding these incidents are undisputed. Only the May 3, 1994, incident and the November 15, 1994, incident were sexual in nature, and only the May 3 incident overtly so. Looking at all the circumstances under the guidelines set forth in *Harris,* the court finds that these incidents are not sufficiently severe or pervasive to create an objectively hostile or offensive working environment. 510 U.S. at 20–23, 114 S.Ct. at 370–71. *See also Black v. Zaring Homes, Inc.,* 104 F.3d 822 (6th Cir.1997). The incidents were infrequent, occurring only twice, six months apart. Both incidents were verbal only, involving no physical contact, and on both occasions Spellings said nothing more after Walker indicated she was not interested. Neither incident occurred within the hearing of other employees. (Walker Dep. at 26, 33.) There is also no evidence that either incident unreasonably interfered with Walker's work performance. 510 U.S. at 22–23, 114 S.Ct. at 371.

The court finds that Brown Group is entitled to summary judgment on Walker's claims under Title VII.[9]

### *STATE LAW CLAIMS*

Brown Group seeks summary judgment on all the Plaintiffs state law claims on the grounds that the claims are either barred by the applicable statute of limitations or fail on the merits, or both. Each of the Plaintiffs has asserted a claim against Spellings for outrageous conduct/intentional infliction of emotional distress. Gracie Myrick also has a claim for invasion of privacy by intrusion. Each of these claims is an action for personal injury governed by the one-year statute of limitations set forth in Tenn.Code Ann. § 28–3–104(a)(1). The complaint in this case was filed on June 28, 1995. Thus, if Plaintiffs' claims accrued prior to June 28, 1994, they are barred. Plaintiffs, however, argue that the filing of administrative charges within one year of the complained of conduct tolls the one-year statute of limitations.

The tolling argument was rejected by this court in *Burnett v. Tyco Corp.,* 932 F.Supp. 1039 (W.D.Tenn.1996). "[T]he court is also unpersuaded that filing administrative charges with the THRA and the EEOC tolled the limitations period for the remaining state law claims." *Id.* at 1044. Federal courts are granted supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367. Section 1367, however,

> is only a grant of jurisdiction over otherwise valid claims." [A plaintiff may not] bring a time-barred state law claim in federal court merely because she also has a federal claim arising out of the same facts. A federal court is obligated to apply the applicable state law, and may not simply ignore a clear statute of limitation. authorize a federal court to ignore a state statute of limitations governing such claims. Plaintiff has cited no Tennessee decisions, and the court has found none, indicating that the Tennessee courts would allow tolling under these circumstances.

*Id.*

The outrageous conduct claims asserted by Scarborough and Roberson are clearly barred by the one-year statute of limitations. Scarborough concedes in her deposition that no harassment occurred after April 10, 1994. (Scarborough Dep. at 72.) Roberson voluntarily ended her employment at the plant on April 21, 1994. (Compl.¶ 28.)

The only incident upon which Spurgeon could conceivably base a timely outrageous conduct claim is the allegation that sometime in June, 1994, after she quit and was seeking other employment, Spellings gave an unfavorable reference to a potential employer, Intrimm. (Spurgeon Dep. at 79.)[10]

9. Brown Group's motion for summary judgment addresses any purported retaliation claim made by Walker. Walker's response to the motion, however, does not address any such claim.

The court finds that Walker's complaint fails to state a claim of retaliation, and that even if it did, she has failed to establish a prima facie case. There is absolutely no evidence in the record that Spellings or anyone else ever took any adverse employment action against Walker. *See Avery Dennison Corp.,* 104 F.3d at 860 and *Mattern,* 104 F.3d at 706–07, *supra.*

10. Spurgeon also testified that she thought Spellings gave a bad reference to another potential employer, Venture One, in April, 1995. However, the evidence shows that Spellings left the Brown Shoe plant permanently in March, 1995.

As indicated in the court's previous order, 935 F.Supp. at 962, in order to establish a claim of outrageous conduct, Plaintiffs must prove: 1) that the conduct complained of was outrageous, not tolerated in civilized society; and 2) that the conduct resulted in serious mental injury. *Dunn v. Moto Photo, Inc.*, 828 S.W.2d 747, 751 (Tenn.Ct.App.1991); *see also Fann v. City of Fairview*, 905 S.W.2d 167, 175 (Tenn.Ct.App.1995).

The standard that must be met in outrageous conduct cases is a high one:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct is characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly untolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

*Medlin v. Allied Inv. Co.*, 217 Tenn. 469, 398 S.W.2d 270, 274 (1966) (quoting Restatement (Second) of Torts § 46, cmt. b); *Dunn*, 828 S.W.2d at 751. Giving a former employee a bad reference, even if it is false, simply does not rise to the level of outrageous conduct.

Lowery's claim of outrageous conduct against Spellings is based on Spellings' behavior following Lowery's complaint about Dwayne Frazier on December 8, 1994. Lowery testified that Spellings told her he did not want the incident regarding Frazier out in the open, and that he did not want many people involved. (Lowery Dep. at 43, 48.) The next day, when Lowery requested union representation during another meeting with Spellings, he told her he could see they were not on the same side, and stated "my girls can make your job a living hell." (Lowery Dep. at 51–52.) Lowery also believes that Spellings whispered to a co-worker, Edmonds, that Lowery was a lesbian. (Lowery Dep. at 45–46, 94.) Lastly, Lowery complains that Spellings acted like he was going to run over her with a case of shoes. (Lowery Dep. at 109–112.)

A mere recitation of these incidents makes it obvious that the conduct complained of, whether examined individually or collectively, clearly is not "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly untolerable in a civilized community." Restatement, § 46, cmt. b. Thus, Lowery has failed to create a disputed issue of fact on her claim of outrageous conduct.

Walker has also failed to establish a claim of outrageous conduct against Spellings. The only incidents upon which Walker could base a timely claim of outrageous conduct are 1) Spellings' comments on November 15, 1994, after Walker had attended a basketball game without her husband the evening before (Walker Dep. at 30–34), and 2) the passing around of a petition and collection box for Frazier, which Walker believes Spellings initiated or approved. (Walker Dep. at 35–43.) These incidents obviously do not rise to the level of outrageous conduct.

Myrick also has testified regarding only two incidents upon which a timely outrageous conduct claim could be based. Myrick testified that on December 19, 1994, Spellings called her a liar (Myrick Dep. at 36–40.) Later, on January 3, 1995, when Myrick asked Spellings for a day off work, he asked her what she would give him in return. (Myrick Dep. at 34–35.) Again, these incidents, without doubt, do not rise to the level of outrageous conduct.

Myrick's invasion of privacy by intrusion claim clearly is barred by the one-year statute of limitations. The court previously held that Myrick had stated an intrusion claim, based upon her allegation that Spellings followed Myrick home, and on several occasions attempted to enter her home without her consent, even trying to get in through a window. 935 F.Supp. at 964. Myrick testified in her deposition, however,

Therefore, any unfavorable reference given to Venture One cannot have come from Spellings.

that those events occurred in the early 1970s. (Myrick Dep. at 14–17, 31–32.)

The court finds that Brown Group is entitled to summary judgment on all of Plaintiffs' remaining state law claims.

*CONCLUSION*

For the reasons specified in the foregoing discussion, each of the five separate motions for summary judgment filed on behalf of Brown Group is hereby GRANTED. Judgment will be entered accordingly.

IT IS SO ORDERED.