EQUAL EMPLOYMENT OPPORTU-
NITY COMMISSION and Chan-
dra Perry, Plaintiffs,

v.

TACO BELL CORP., Defendant,

and

Chandra Perry and Taco Bell Corp.,
Third–Party Plaintiffs,

v.

Terence E. Davis, Third–
Party Defendant.

No. 2:07–cv–2579.

United States District Court,
W.D. Tennessee,
Western Division.

Sept. 15, 2008.

Darin B. Tuggle, Faye A. Williams, Gwendolyn Young Reams, James Lee, Ronald S. Cooper, Equal Employment Opportunity Commission, Memphis, TN, William A. Cash, Jr., Equal Employment Opportunity Commission Little Rock Area Office, Little Rock, AR, for Plaintiffs.

Kathleen L. Caldwell, Law Office of Kathleen L. Caldwell, Pamela R. Irons, Paul E. Prather, Sylvia R. Adams, Kiesewetter Wise Kaplan & Prather, PLC, Memphis, TN.

Terence E. Davis, Memphis, TN, pro se.

## ORDER GRANTING PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

BERNICE BOUIE DONALD, District Judge.

Before the Court is Plaintiff Equal Employment Opportunity Commission's ("EEOC") Motion for Leave to File Amended Complaint. (D.E.# 27.) The EEOC proposes to amend its September 11, 2007 Complaint by asserting additional claims of sexual harassment and constructive discharge against Defendant Taco Bell Corporation ("Taco Bell") on behalf of an Aggrieved Party whom the EEOC discovered after the lawsuit was filed. For the following reasons, the Court grants the EEOC's Motion for Leave to File Amended Complaint.

1. For purposes of this motion, the Court ac-

## I. BACKGROUND[1]

### A. THE CHARGING PARTY

The EEOC's original Complaint alleges that Taco Bell subjected Chandra Perry ("Perry"), the Charging Party, to sexual harassment and constructive discharge. On April 22, 2006, Perry, then sixteen years old, began working for Taco Bell as a crewmember at its 2183 Frayser Boulevard restaurant in Memphis, Tennessee. (Pl.'s Compl. ¶¶ 6, 9.) On her first day of work, Store Manager Terence Davis ("Davis"), who was thirty-five years old at the time, subjected Perry to unwelcome sexual harassment, which included: kissing her, grabbing her breasts, grabbing her buttocks, placing his tongue down her mouth, fondling her, blocking the door and preventing her from leaving, and sexually assaulting her by penetrating her genitalia with his fingers and requesting that she meet him later in the restroom. (Id. ¶¶ 10–13.) Perry fled the restaurant and did not return to work. (Id. ¶ 15.) On May 13, 2006, Perry filed Charge No. 490–2006–01395 with the EEOC. (Id. ¶ 8.) The EEOC sent Taco Bell a Notice of Conciliation Failure on August 1, 2007. (Def.'s Resp. in Opp'n, Ex. 4.) On September 11, 2007, the Commission filed its original Complaint against Taco Bell pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e et seq., and Title I of the Civil Rights Act of 1991, 42 U.S.C. §§ 1981a, et seq.

### B. THE AGGRIEVED PARTY

On July 18, 2008, the EEOC filed its present Motion for Leave to File Amended Complaint. In its motion, the Commission seeks to assert additional claims of sexual harassment and constructive discharge against Taco Bell on behalf of a later discovered Aggrieved Party, Debreccia

cepts these facts as true.

Davis ("Aggrieved Party"). The EEOC alleges that in or around September 2005, Davis recruited the Aggrieved Party, then sixteen years old, to work as a crewmember at Taco Bell's Frayser Boulevard location. (Pl.'s Mtn. for Leave to File Am. Compl., Ex. 3, Am. Compl. ¶ 8 [hereinafter, "Pl.'s Am. Compl."] ). Davis began subjecting the Aggrieved Party to unwelcome sexual harassment, which included: making sexually-charged comments, directing sexually-explicit gestures at her, and brushing his body against hers. (*Id.* ¶¶ 9–12.) The Aggrieved Party complained to senior male employees at the restaurant, but the harassment continued.[2] (*Id.* ¶ 13.)

The Aggrieved Party informed Davis that she and her family were moving to a new neighborhood. (*Id.* ¶ 14.) Davis told her that he knew the manager of the Taco Bell restaurant in her new neighborhood and would arrange a transfer for her. (*Id.*) A few days after the Aggrieved Party moved to her new house, Davis called her on her cell phone and learned that she was home ill. (*Id.* ¶ 15.) On November 15, 2005, Davis, with the pretext of delivering the Aggrieved Party's paycheck, went to her home. (Def.'s Resp. in Opp'n ¶ 15; Pl.'s Am. Compl. ¶ 15.) He then forced his way into the residence and sexually assaulted her. (Pl.'s Am. Compl. ¶ 15.) After the assault, Davis sent her sexually-charged text messages. (*Id.* ¶ 16.) The Aggrieved Party's last day of work with Taco Bell was November 9, 2005[3] (Def.'s Resp. in Opp'n ¶ 14) and she did not return to work with Taco Bell after the assault (Pl.'s Am. Compl. ¶ 17). As a result of the sexual assault, the Aggrieved Party bore a

child and court-ordered tests have confirmed that Davis is the father. (*Id.* ¶ 18.)

The parties dispute the manner in which the EEOC learned of the Aggrieved Party's allegations. The Commission asserts that during its investigation of Perry's charge of discrimination, it attempted to determine whether Davis had sexually harassed any other individuals under his supervision. (Pl.'s Mtn. for Leave to File Am. Compl. 3.) As part of its investigation, the EEOC requested the names and applications of all of the employees Davis supervised during the nine months he was employed as a manager of the restaurant. (*Id.*) Taco Bell purportedly provided such information, and based on this information, the Commission did not identify any additional victims. (*Id.*) However, after Davis was indicted based on Perry's allegations, the EEOC discovered that Davis had also assaulted the Aggrieved Party. (*Id.*) Neither the Aggrieved Party's name nor application was provided to the Commission during its investigation into Perry's charge. (*Id.*) The EEOC asserts that had Defendant disclosed the Aggrieved Party's identity during its investigation into Perry's charge, it would have investigated the Aggrieved Party's allegations at the time and included her in the original Complaint. (*Id.*)

In contrast, Taco Bell asserts that it objected to the EEOC's request for the names and applications of the employees supervised by Davis over a nine-month period as overly broad. (Def.'s Resp. in Opp'n ¶¶ 3–4.) Instead, Taco Bell produced the names of the individuals employed at the Frayser Boulevard restaurant on April 22, 2006, the date of the

---

2. However, Taco Bell maintains that the Aggrieved Party did not make any complaints of sexual harassment while employed with Taco Bell or after her employment ended. Def.'s Resp. in Opp'n ¶ 16.

3. The Aggrieved Party remained on Taco Bell's payroll until December 27, 2005. Pl.'s Mtn. for Leave to File Am. Compl. 4.

alleged incident involving Perry. (*Id.* ¶ 4.) Taco Bell maintains that at no time did it represent that it would produce documents responsive to the EEOC's original request. (*Id.* ¶ 5.) In addition, the EEOC never exercised its statutory power to compel disclosure of the identities of the employees who worked at the Frayser Boulevard location during Davis's tenure. (*Id.*)

Furthermore, in late November 2006, Perry told the EEOC that she was approached by another student at her school. (*Id.* ¶ 6.) This student told Perry of a similar incident of sexual harassment involving another student at the school who had worked under Davis's supervision at Taco Bell. (*Id.*) Taco Bell asserts that the Commission did not advise it of this allegation during the processing of Perry's charge. (*Id.*)

The parties were unable to resolve the matter involving the Aggrieved Party during conciliation. (Pl.'s Mtn. for Leave to File Am. Compl. 4.)

## C. PROCEDURAL HISTORY

The EEOC filed its original Complaint as to Perry on September 11, 2007, and Taco Bell filed its answer on December 26, 2007. On December 21, 2007, the Court entered a scheduling order, which set as deadlines March 29, 2008 for amending pleadings, August 29, 2008 for completing all discovery, and October 15, 2008 for filing dispositive motions. The EEOC filed its present motion to amend on July 18, 2008, almost four months after the deadline for amending pleadings.

## II. LEGAL STANDARD

■■■ Rule 15 of the Federal Rules of Civil Procedure "reinforce[s] the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" *Moore v. City of Paducah,* 790 F.2d 557, 559 (6th Cir.1986) (quoting *Tefft v.*

*Seward,* 689 F.2d 637, 639 (6th Cir.1982)). Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." However, "[t]he broad, permissive language appearing" in Rule 15 "does not mean that there are no standards by which the trial court is to be guided...." 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1474 at 522 (2d ed.1990). "Although Rule 15(a) indicates that leave to amend shall be freely granted, a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension & Brake,* 49 F.3d 1197, 1202 (6th Cir.1995). In determining whether or not to grant a motion to amend, courts consider several factors including:

> [u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment.... Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Wade v. Knoxville Utils. Bd.,* 259 F.3d 452, 458–59 (6th Cir.2001) (quoting *Head v. Jellico Hous. Auth.,* 870 F.2d 1117, 1123 (6th Cir.1989)). "When amendment is sought at a late stage in litigation, there is an increased burden to show justification for failing to move earlier." *Id.* at 459. The determination of a motion to amend "is committed to the district court's sound discretion." *Moore,* 790 F.2d at 559.

## III. ANALYSIS

The EEOC asserts that it has met the legal standard for amending its Complaint pursuant to Federal Rule of Civil Procedure 15(a). In contrast, Taco Bell argues

that the EEOC cannot show good cause to amend its pleading under Rule 16(b) of the Federal Rules of Civil Procedure and/or that the proposed amendment is futile because the Aggrieved Party failed to exhaust her administrative remedies.

## A. RULE 16(b)

■ Rule 16(b) of the Federal Rules of Civil Procedure provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R.Civ.P. 16(b)(4). In *Leary v. Daeschner*, the Sixth Circuit addressed the interplay between Rule 15(a)'s requirement that leave to amend should be freely given and Rule 16(b)'s good cause requirement. *Hill v. Banks*, 85 Fed. Appx. 432, 433, 2003 WL 23156641 (6th Cir.2003). The *Leary* court concluded that "[o]nce the scheduling order's deadline passes, a plaintiff first must show good cause under *Rule 16(b)* for failure earlier to seek leave to amend before a court will consider whether amendment is proper under *Rule 15(a)*." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). Additionally, "a determination of the potential prejudice to the nonmovant also is required when a district court decides whether or not to amend a scheduling order." *Id.*

■ In the present case, Taco Bell contends that the EEOC has failed to meet its burden of showing "good cause" under Rule 16(b)(4) because the EEOC failed to exercise proper diligence in locating the Aggrieved Party and because Taco Bell would suffer material prejudice if the Court were to permit the EEOC to add the Aggrieved Party's claims. Based on the facts discussed herein, the Court finds that the EEOC has met its burden of demonstrating "good cause" because it exercised diligence in locating the Aggrieved Party and because any prejudice suffered by Taco Bell came largely through its own creation.

The EEOC first attempted to obtain the identity of all the employees who had worked under Davis through a November 30, 2006 letter. (D.E.# 33: Ex. 2 at EEOC 0088–0089.) The letter requests "[a] roster of all employees annotated by date of hire, name, sex, address, telephone number, date of termination and reason, if applicable from April 1, 2005, to the present." (*Id.*) In response to this request, Taco Bell requested two extensions of time to produce the documents (*Id.:* Ex. 2 at EEOC 0090, 0087.) On January 16, 2007, counsel for Taco Bell responded with a letter to the EEOC, which denied the allegations of sexual harassment made against Taco Bell, and produced a copy of Davis's personnel file, some other documents, and a list of the employees that were working in the Taco Bell on the date of the alleged incident. (*Id.:* Ex. 2 at EEOC 0092–0094.)

On January 25, 2007, the EEOC in a letter renewed its request for the "home telephone numbers of *former and present* employees who worked under the supervision of Terrence Davis." (*Id.:* Ex. 2 at EEOC 0084.) On February 2, 2007, counsel for Taco Bell responded with a letter stating that it would make the employees who worked under Davis available, as the majority were still employed by Taco Bell. (*Id.:* Ex. 2 at EEOC 0081.) Once again, Taco Bell failed to directly respond to the EEOC's request. Additionally and despite its assertion to the contrary, nowhere in either the January 16th letter or the February 2nd letter does Taco Bell object to the scope of the EEOC's request or contend in any way that the information requested will not be produced. (*See* Def.'s Resp. in Opp'n ¶ 4.)

The EEOC did not receive the information that it originally requested on November 30, 2006, until May 5, 2008, when Taco

Bell in response to the EEOC's First Set of Interrogatories finally produced the full list of employees employed under Davis. Notably, Taco Bell did not object to the request as overly broad. (*See* Def.'s Answers to EEOC's First Set of Interrogatories, No. 1.)

As evidence of good cause to support the modification of the scheduling order, the EEOC contends that it would have located the Aggrieved Party sooner had it not been for the delay of Taco Bell. Moreover, the EEOC argues that Taco Bell should not be able to complain of prejudice when it was Taco Bell's own delay and failure to act in "good faith" that led to the delay in identifying the Aggrieved Party. The Court finds that the EEOC's arguments are well-taken. The correspondence between the EEOC and counsel for Taco Bell indicates that the EEOC repeatedly requested the names of and contact information for the employees that worked at the Frayser Taco Bell during Davis's time as a store manager. In response to these requests, Taco Bell never voiced any objection to the production of this information. To the contrary, Taco Bell proceeded as though it was conducive to the requests. In retrospect, it appears from the record and efforts by the EEOC to contact the individuals whose names were produced by Taco Bell that the EEOC would have identified and located the Aggrieved Party faster had Taco Bell produced the employee names when originally requested. Because the EEOC has demonstrated diligence in finding the identity of the Aggrieved Party and because any prejudice to Taco Bell stems primarily from its own delay and actions, the Court finds good cause for the modification of the scheduling order.

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

■ Despite a finding of good cause for the modification of the scheduling order,

Taco Bell correctly notes that a motion to amend the complaint should not be granted if the proposed amendment would then be subject to dismissal. *See, e.g., Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 307 (6th Cir.2000); *see also Inge v. Rock Financial Corp.*, 388 F.3d 930, 938 (6th Cir.2004). Taco Bell argues that despite a finding of good cause, amendment of the complaint to include the Aggrieved Party's claim is futile because her claim is untimely and because the exception of the single filing rule should not apply.

■ When a claim is brought pursuant to Title VII, a plaintiff must first exhaust his or her administrative remedies by filing an EEOC charge. 42 U.S.C. § 2000e–5(f)(1). "The purpose of the requirement is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir.2004). Accordingly, "federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge." *Strouss v. Michigan Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir.2001).

■ The Sixth Circuit, however, has recognized the single filing rule exception to this requirement. Under the single filing rule, "where a substantially related non-filed claim arises out of the same time frame as a timely filed claim, the complainant need not satisfy Title VII's filing requirement to recover." *EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836, 840 (6th Cir.1994). In addition, "a charge will be adequate to support piggybacking under the single filing rule if it contains sufficient

information to notify prospective defendants of their potential liability and permit the EEOC to attempt informal conciliation of the claims before a lawsuit is filed." *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 195 (6th Cir.1995). To determine the adequacy of a charge for use in piggybacking subsequent plaintiffs, courts often look to the size and type of the work unit involved. *Id.* "[M]ere similarity of the grievances within the same general time frame suffices to permit the 'single filing rule'" when the complaints "arise in a work unit of modest size." *Id.* (quoting *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1058 (2d Cir. 1990)).

In applying the "single filing rule" to the present case, Taco Bell argues that the Aggrieved Party's claim should not be permitted because her allegations did not fall within the same time frame as Perry's. Additionally, Taco Bell contends that Perry's charge did not provide notice to Taco Bell that other similarly situated employees were discriminated against, so her charge is not sufficient to permit the Aggrieved Party to piggyback. For the reasons stated herein, the Court finds that the single filing rule applies in this instance and the Aggrieved Party is permitted to piggyback on Perry's timely charge.

In arguing that the "single filing rule" does not apply, Taco Bell first claims that the Aggrieved Party's and Perry's complaints of sexual harassment did not occur within the same time frame. In support of this contention, Taco Bell relies on *Scarborough v. Brown Group, Inc.*, 972 F.Supp. 1112 (W.D.Tenn.1997). *Scarborough* narrowly interprets the "same time frame" element and finds that claims do not arise in the same time frame if the employment and harassment of a plaintiff who timely files a complaint and other employees who wish to piggyback on the timely filed complaint do not overlap. *Id.*

at 1117. Specifically, the court in *Scarborough* held that a three day gap between the employment of a party who timely filed a charge and a party who attempted to piggyback on the charge took the claims outside of the same time frame. *Id. Scarborough's* limited interpretation of the "same time frame" element of the single filing rule lies contrary to the Sixth Circuit's holding in *EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836 (6th Cir.1994), which established the single filing rule in this Circuit.

In *Wilson Metal Casket*, the Sixth Circuit allowed one complainant to piggyback on to another even though the complainants never worked together and were employed approximately three years apart. *Id.* at 840. The original filer in that case was terminated in September, 1984, and the complainant who attempted to piggyback was hired in 1987, harassed for a three-month period, and then terminated. *Id.* at 839. The court held that "[c]learly, Wilson [the harassing supervisor/owner] engaged in a common practice of sexual harassment of female employees. Because the practice of sexual harassment in this case continued over a three year period, the claims arose during the same time period." *Id.*

As was the case for the charging parties in *Wilson Metal Casket*, Perry and the Aggrieved Party make allegations of sexual harassment against the same individual, Davis. Unlike the three years that separated the charging parties' employment in *Wilson Metal Casket*, however, Perry's and the Aggrieved Party's periods of employment were separated in this case by only a few months. If the allegations against Davis prove to be true, Perry and the Aggrieved Party will have established a "common practice of sexual harassment" by Davis. Pursuant to the Sixth Circuit's holding in *Wilson Metal Casket*, this Court

finds that Perry's and the Aggrieved Party's claims arose during the same time period. Therefore, Taco Bell's assertion that the single filing rule does not apply because of the same time frame requirement fails.

In addition to its contention that the claims did not occur in the same time period, Taco Bell argues that Perry's charge did not provide notice that other similarly situated employees were discriminated against. In support of this argument, Taco Bell cites to *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189 (6th Cir.1995), and contends that *Howlett* holds that a charge is only adequate for piggybacking if it "contains sufficient information to notify prospective defendants of their potential liability." *Id.* at 195. As the Sixth Circuit noted in *Howlett*, the extent of the notice required to allow piggybacking varies significantly depending on the size and type of the work unit involved. *Id.* Specifically, the Sixth Circuit noted that "[w]here grievances arise in a work unit of modest size, ... mere similarity of the grievances within the same general time frame suffices to permit the 'single filing rule.' "[4] *Howlett*, 49 F.3d at 195 (quoting *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1058 (2nd Cir.1990)). The Court finds that Perry's charge is adequate for purposes of the single filing rule. Perry's grievances are markedly similar to those of the Aggrieved Party and specifically concern the actions of one individual. Given the seriousness of Perry's allegations and the small work unit in which the charging parties were employed, Perry's charge is sufficient to support piggybacking by the Aggrieved Party.

Because Perry's and the Aggrieved Party's grievances occurred during the same time frame and because they occurred within a small work unit, Perry's charge is sufficient to support piggybacking and the single filing rule is applicable.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the EEOC's Motion for Leave to File Amended Complaint.

**IT IS SO ORDERED.**

---

**4.** Taco Bell states that the Sixth Circuit implies that the "single filing rule may apply to a modest size *employer* if there is a similarity in grievances with the same time frame." (Def.'s Resp. in Opp'n at 13 n. 9 (emphasis added).) Significantly, however, the Sixth Circuit does *not* reference the size of the employer, but focuses on the size of the work *unit.* Here, the work unit is not Taco Bell, the company. The relevant work unit is the group of individuals who were supervised by Davis during his tenure as store manager.